2015 Ark. 318

**Robert HOLLAND, Appellant**

v.

**State of ARKANSAS, Appellee.**

**No. CR–14–833**

Supreme Court of Arkansas.

Opinion Delivered September 17, 2015

Charlene Davidson Henry and Paul J. Teufel, for appellant.

Leslie Rutledge, Att'y Gen., by: Jacob H. Jones, Ass't Att'y Gen., for appellee.

RHONDA K. WOOD, Associate Justice

Robert Holland was convicted of capital murder after a jury found that he had strangled his prison cellmate to death. He received the death penalty. On appeal, Holland raises three issues. Only one of these issues is properly preserved: whether the circuit court should have sustained Holland's *Batson* challenge to the State's

use of peremptory strikes to exclude three African Americans from the jury. We hold that the court's decision to reject Holland's *Batson* challenge was not clearly against the preponderance of the evidence and affirm Holland's sentence of death.

As of December 2012, Robert Holland was serving a life sentence for capital murder in the Cummins Unit of the Arkansas Department of Correction. For some time Holland had been refusing to have a cellmate and, for this reason, had been subject to various disciplinary measures. But on December 7, 2012, he finally agreed to accept a cellmate; Matthew Scheile, who was serving a four-year prison term, was assigned to his cell.

Later that night, as two correctional officers were making their rounds, Holland told the officers that he had killed Scheile. The two officers could see Scheile lying on the floor in the cell he shared with Holland. A medical examiner would later determine that Scheile's cause of death was ligature strangulation and death by homicide. Holland explained to a state-police investigator that he had killed Scheile in order to force the prison to give him a single cell while avoiding further disciplinary sanctions for refusing a cellmate.

The State filed capital-murder charges against Holland. Holland appeared before the circuit court for a plea and arraignment on February 14, 2013. There, the court appointed the public defender to represent Holland; at the time, however. Holland was unrepresented by an attorney. Despite the court's discouragement.

Holland insisted on pleading guilty, and the court ultimately accepted his plea.

Sometime after the plea-and-arraignment hearing, the State filed notice that it would seek the death penalty against Holland. A pretrial omnibus hearing was held on June 10, 2014; at that hearing, Holland was represented by an attorney. Neither the court nor Holland's attorney made any mention of Holland's earlier guilty plea. The trial went ahead as scheduled with a different judge. A jury found Holland guilty of capital murder and sentenced him to death after a sentencing hearing where the only two witnesses were the victim's mother and his brother.

Holland raises three points on appeal, none of which include the sufficiency of the evidence. First, Holland argues that he was placed in double jeopardy because he pleaded guilty to capital murder but was subsequently put on trial for the same offense. Second, he argues that he received ineffective assistance of counsel because his attorney failed to present any mitigating evidence during the sentencing phase of the trial. We cannot address either of these arguments because they are being raised for the first time on appeal. "[E]ven constitutional issues will not be considered when raised on appeal for the first time." [1] *Ussery v. State,* 308 Ark. 67, 70, 822 S.W.2d 848, 849 (1992). Moreover, Holland's ineffective-assistance-of-counsel claim is better suited to Rule 37 proceedings and can be addressed on direct appeal only if it is raised to the circuit court. *See Breeden v. State,* 2013 Ark. 145, 427 S.W.3d 5. Since this issue was

---

1. Holland makes a perfunctory argument that the double-jeopardy issue is subject to the third *Wicks* exception. Under that exception, an argument can be raised on appeal for the first time if the issue involves the circuit court's duty to intervene and correct a serious error. *Wicks v. State,* 270 Ark. 781, 606 S.W.2d 366 (1980). This exception has been applied only where a "defendant's fundamental right to a trial by jury is at issue." *Anderson v. State,* 353 Ark. 384, 398, 108 S.W.3d 592, 600 (2003). Because Holland actually received a jury trial, the third *Wicks* exception does not apply, and Holland was required to object in order to preserve the double-jeopardy issue.

not raised there, we cannot address it now.[2]

Holland's third argument is that the circuit court erred when it rejected his *Batson* challenge to the State's use of its peremptory strikes to remove three African Americans from the petit jury. We hold that the court's denial of Holland's *Batson* challenge was not clearly against the preponderance of the evidence. In *Batson v. Kentucky*, the United States Supreme Court outlined a process for evaluating claims that the State has misused its peremptory challenges during jury selection. 476 U.S. 79, 96–98, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We recently explained the three-step *Batson* procedure as follows:

First, the opponent of the peremptory strikes must present facts to make a prima facie case of purposeful discrimination. Second, upon a showing of a prima facie case of systematic discrimination, the State is required to give a race-neutral explanation for the strikes. Third, the circuit court must decide whether the opponent of the strike has proved purposeful discrimination. On appeal, we will not reverse a circuit court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. Some deference is accorded the circuit court in making this decision because it has the opportunity to observe the parties and determine their credibility.

*McMiller v. State*, 2014 Ark. 416, at 3, 444 S.W.3d 363, 365–66 (internal citations omitted).

In this case, jury selection proceeded in two stages. The first stage was the death-qualification stage. According to United States Supreme Court precedent, a juror may be ineligible to serve in a death-penalty case if he or she would automatically impose the death penalty in every capital-murder case or would never impose the death penalty no matter the circumstances.[3] During this stage, the attorneys and the court conducted voir dire to whittle the initial jury panel down to forty-one death-qualified jurors. Once the jury panel was death-qualified, the State and the defense were allowed to exercise peremptory strikes. Under the procedure used in this case, the circuit court would first identify a juror. If neither the State nor the defense used a peremptory strike, then that juror was seated on the petit jury.

The *Batson* issue arose when the State used its peremptory strikes to remove the first three African Americans who were seated on the petit jury. As the State struck each African–American juror, the defense called it to the court's attention to preserve a possible *Batson* violation. After the State struck the third

---

2. Holland has also argued, in vain, that his ineffective-assistance-of-counsel claim should fall within a *Wicks* exception. We have rejected a similar argument before. *See Rackley v. State*, 371 Ark. 438, 441, 267 S.W.3d 578, 581 (2007) ("Our research has not revealed a single case where this court has considered an ineffective-assistance, conflict-of-interest argument on direct appeal in the absence of a proper objection in the trial court."). And as far as we can tell, there is nothing that will prevent Holland from raising this issue, and developing a much more complete record, during Rule 37 proceedings.

3. *See Morgan v. Illinois*, 504 U.S. 719, 739, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) (holding that a court must allow the defendant to ask in voir dire whether a potential juror would automatically impose the death penalty and suggesting that such a juror "should be disqualified for cause"); *Witherspoon v. Illinois*, 391 U.S. 510, 522 n.21, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) (noting that a potential juror should "not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings").

African American, Holland objected and the circuit court agreed that a prima facie case for purposeful discrimination existed. The State then provided its race-neutral reasons for making the strikes. First, the State explained that it struck Juror Finney because she had testified that a potential witness for the defense was her former pastor. Second, the State explained that it struck Juror Tensley because Tensley's son was being prosecuted for introducing contraband into a prison. Third, the State explained that it struck Juror Freeman because Freeman had a son in prison. After the State gave its race-neutral explanations, the defense offered no further evidence of discrimination nor did it renew the objection. The court concluded that the State's explanations were sufficient to survive the defense's *Batson* challenge.

 Holland now argues to us on appeal that the State's reasons for using the strikes were insufficiently race neutral. Holland further argues that the State failed to produce "race neutral testimony or documentary evidence" to justify the strikes. But this argument confuses the burden of proof, which rests squarely with the party opposing the strikes, i.e., the defense. *Williams v. State,* 2009 Ark. 433, at 6, 373 S.W.3d 237, 241 ("[T]he ultimate burden of persuasion that there is a purposeful intent rests with and never shifts from the party opposing the strikes."). Thus, the State was only required to provide a race-neutral explanation; it was under no burden to produce more testimony or introduce any evidence. Further, Holland concedes that purposeful discrimination should be measured, in part, on "the prosecutor's demeanor [and] by how reasonable, or how improbable, the explanations are." *See Miller–El v. Cockrell,* 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). Again, the circuit court's decisions based on demeanor and credibility are entitled to deference because the court is in a much better position to gauge the State's sincerity when presenting its race-neutral explanations. *McMiller, supra.*

In sum, the circuit court's decision to deny the *Batson* claim is not clearly against the preponderance of the evidence. The State's reasons for exercising the strikes were sufficiently race-neutral. Holland can point to nothing else that would call the State's explanation into doubt. Since Holland's argument boils down to "the court should have not believed the State," and because issues of credibility and demeanor rest almost exclusively with the circuit court, we are left with no choice but to affirm.

Finally, we note that under Rule 10 of the Arkansas Rules of Appellate Procedure–Criminal, the entire record has been reviewed, including those issues that were not properly preserved for appeal, and we hold that no reversible error exists. The record has also been reviewed under Arkansas Supreme Court Rule 4–3(i) (2014). No reversible error has been found.

Affirmed.