Cite as 2020 Ark. 313

# SUPREME COURT OF ARKANSAS

No. CR-19-591

| | | |
|---|---|---|
| | | **Opinion Delivered:** October 8, 2020 |
| TRACY WILL VAUGHN | | |
| | APPELLANT | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. 73CR-18-151] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE ROBERT EDWARDS, JUDGE |
| | APPELLEE | |
| | | AFFIRMED; COURT OF APPEALS OPINION VACATED. |

SHAWN A. WOMACK, Associate Justice

Tracy Will Vaughn was convicted of second-degree sexual assault and sentenced to sixty months' imprisonment. This appeal centers on his victim's therapy records. We hold that the records are protected from disclosure by the absolute psychotherapist-patient privilege in Arkansas Rule of Evidence 503. The conviction is affirmed.

I.

In February 2018, Vaughn was charged with sexually assaulting nine-year-old K.H. He was also charged with three counts of sexual indecency with a child, which involved K.H. and her friend, B.W. The White County Sheriff's Office initiated an investigation in June 2016 following a report from B.W.'s father. The girls were interviewed at the Child Safety

Center in Searcy.[1] During the interview, B.W. stated that Vaughn made the girls touch each other inappropriately while they were nude in his pool. At that time, K.H. denied any sexual contact by Vaughn. When Vaughn was interviewed by police, he admitted that he touched K.H.'s genitals three times and that she had touched his penis once through clothing. Vaughn stated that K.H. had crawled on top of him in bed and "hunched" him. He also admitted to becoming aroused when K.H. danced "provocatively" near him.

The investigator's affidavit, attached to the criminal information, recounted the admissions from the June 2016 investigation. The affidavit noted that K.H. "recently disclosed during her therapy session that [Vaughn] exposed his penis and made her touch it [and] that she touched his penis multiple times while she was swimming in his pool." Citing the reference to K.H.'s therapy sessions, Vaughn moved for disclosure of her medical and counseling records on April 18, 2018. He asserted a right to the records under the state and federal constitutions. He also argued that the psychotherapist-patient privilege did not apply and had been waived or estopped by the prosecution. Citing *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), and *Brady v. Maryland*, 373 U.S. 83 (1963), Vaughn sought to compel the State to disclose the records or, alternatively, requested the court to conduct an *in camera* review for exculpatory or impeachment material.

---

[1]Child Safety Centers are part of a statewide program to provide a comprehensive and coordinated response to child abuse investigations. *See* Ark. Code Ann. § 9-5-102 (Repl. 2016). The Center conducts forensic interviews that are not subject to the privilege at issue here.

At a pretrial hearing on May 16, the circuit court stated the records would be submitted for an *in camera* review under *Ritchie*. The record is unclear on when or how this decision arose and whether the court ordered the prosecution to obtain the records. In any event, the State arrived at the hearing with K.H.'s therapy records spanning from 2011 through 2018. The first set of records were timestamped on May 15—the day before the hearing. The second set of records included a subpoena dated May 10. At Vaughn's request, the State was instructed to determine whether B.W. had any therapy records. Her records, dating before and after the alleged incident with Vaughn, were obtained a week later following a subpoena from the prosecutor.

At the next hearing, Vaughn argued the records were not privileged because the therapy was conducted at the insistence or sponsorship of the State. In response, the prosecutor informed the court that the girls had previously been treated by the same providers and returned to their therapists after the alleged incidents on their own accord. The prosecutor also stated that "up until the Court asked the State to get the records, we did not have access, we did not seek to admit those records[.] . . . And we would argue [K.H. and B.W.] have not waived that privilege that allows them to get assistance that they need, other than if there is something exculpatory to the Defendant."

The court rejected the claim that the victims were sent to therapy for investigative purposes because many of the records were created years before the allegations against Vaughn arose. Ruling from the bench, the court held that the therapy records were absolutely privileged under Arkansas Rule of Evidence 501 and Arkansas Code Annotated

3

§ 17-27-311 (Repl. 2018).[2] It made no determination regarding the existence of any exculpatory material, but noted it read the records and tabbed significant pages for appellate review. The therapy records were entered into the record as sealed court exhibits. The jury subsequently convicted Vaughn of sexually assaulting K.H. in the second degree and sentenced him to sixty months' imprisonment. He was acquitted of two counts of sexual indecency; the third was dismissed on directed verdict.[3]

Vaughn's appeal was initially considered by the Arkansas Court of Appeals. *See Vaughn v. State*, 2020 Ark. App. 185, 598 S.W.3d 549. It determined that Arkansas privilege law did not absolutely shield the records in this case and that the circuit court should have conducted an *in camera* review for favorable evidence under *Brady*. The court of appeals nevertheless affirmed the conviction after reviewing the records and finding they did not satisfy *Brady*'s materiality requirement. This was not an *in camera* review. Instead, the court of appeals gave the parties full access to the sealed records prior to briefing. We cannot condone the court of appeals' troubling approach to the victims' records.[4] As the *Ritchie* Court explained:

---

[2]The circuit court cited Rule 501 but ruled that the records fell under the patient and psychotherapist privilege. That privilege is found within Rule 503 and is the privilege at issue in this case.

[3]Because Vaughn was acquitted of the count involving B.W., we will refer only to K.H.'s records going forward. However, the same analysis applies to B.W.'s records.

[4]The court of appeals recently cited its decision in an order granting a defendant access to his victim's sealed records. *See Turnbo v. State*, No. CR-20-505 (Order, Sept. 9, 2020). For the reasons explained by *Ritchie, infra*, such orders are inappropriate and can no longer stand.

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the [State's] compelling interest in protecting its child abuse information. If the [] records were made available to defendants, *even through counsel*, it could have a seriously adverse effect on [Arkansas's] efforts to uncover and treat abuse. . .. The [State's] purpose would be frustrated if this confidential material had to be disclosed upon demand to a defendant charged with criminal child abuse, simply because a trial court may not recognize exculpatory evidence. Neither precedent nor common sense requires such a result.

*Ritchie*, 480 U.S. at 60–61 (emphasis added).

We granted Vaughn's petition for review and now consider this appeal as though it was originally filed in this court. *See Martin v. Smith*, 2019 Ark. 232, at 2, 576 S.W.3d 32. A circuit court's ruling on the admissibility of evidence will be reviewed for abuse of discretion. *See Vidos v. State*, 367 Ark. 296, 304, 239 S.W.3d 467, 474 (2006). Questions involving the interpretation of law will be reviewed *de novo*. *See Holt v. McCastlain*, 357 Ark. 455, 460–61, 182 S.W.3d 112, 116 (2004).

II.

Vaughn alleges two overarching errors in the circuit court's determination that K.H.'s therapy records were protected from disclosure by the psychotherapist-patient privilege. He first contends the privilege was waived. Vaughn next argues that his constitutional rights of confrontation, compulsory process, and due process warrant provision of all confidential records for an *in camera* examination under *Ritchie*. The State objects to the waiver argument and insists that K.H. did not waive the privilege. We agree with the circuit court that the psychotherapist-patient privilege bars Vaughn's access to the records and reject the assertion that an *in camera* evaluation is required.

## A.

All fifty states, the District of Columbia, and the United States Supreme Court have recognized some form of a psychotherapist-patient privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 12 (1996). The policy behind the privilege is to encourage patients to communicate openly with their therapists and to prevent disclosure of the patient's infirmities. *See State v. Sypult*, 304 Ark. 5, 8, 800 S.W.2d 402, 403 (1990). Indeed, "[e]ffective psychotherapy . . . depends upon an atmosphere of confidence and trust." *Jaffee*, 518 U.S. at 10. The privilege serves the greater public interest by facilitating effective mental health care, which is "a public good of transcendent importance." *Id.* at 11. In Arkansas, the privilege is provided in Arkansas Rule of Evidence 503(b):

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

This privilege governs in both criminal and civil state court proceedings. *See Holland v. State*, 2015 Ark. 341, at 14, 471 S.W.3d 179, 188; Ark. R. Evid. 101. In addition to the evidentiary privilege, Arkansas statutes also provide that "confidential relations and communications" between a therapist and client "are placed upon the same basis as those between an attorney and a client." Ark. Code Ann. § 17-27-311(a) (counselors); Ark. Code Ann. § 17-97-105(a) (Repl. 2018) (psychologists).

The parties do not dispute that K.H.'s therapy records fall within the scope of Rule 503. Vaughn instead challenges whether the privilege was waived. The patient may of course waive the privilege by voluntarily disclosing or consenting to disclosure of any significant part of the privileged matter. *See* Ark. R. Evid. 510. But as the prosecution emphasized at the second pretrial hearing, K.H. did not waive the privilege. Vaughn nevertheless argues the privilege was waived by the affidavit's reference to details K.H. disclosed during therapy and by the child's testimony during cross-examination. In our view, the privilege was not waived by these acts.

Rule 503 gives the patient the privilege. *See McKenzie v. Pierce*, 2012 Ark. 190, at 7, 403 S.W.3d 565, 570; Ark. R. Evid. 503(b). In other words, the State cannot waive K.H.'s privilege. *Id.* Though Vaughn makes the conclusory assertion that mandated reporter laws waive the patient's privilege, we decline to make such a ruling in this case. We simply find no basis to conclude that the affidavit's reference in this case waives K.H.'s privilege.

We are similarly unpersuaded by the assertion that K.H. waived the privilege in response to cross-examination. It is well settled that a witness in a criminal case does not waive the privilege by testifying because the State, not the witness, is the party in a criminal proceeding.[5] *See Collins v. State*, 2019 Ark. 110, at 6, 571 S.W.3d 469, 472; Ark. R. Evid. 503(d). As the Fifth Circuit has explained, a "defendant does not get to crack open every

---

[5]Vaughn argues in his supplemental brief that the State can waive the privilege for a victim because the victim is a *de facto* party to the criminal proceeding. We will not consider this argument as it was not briefed at the court of appeals. *See Fuson v. State*, 2011 Ark. 374, at 8–9, 383 S.W.3d 848, 854.

confidential communication with a victim's psychotherapist simply because that victim may have discussed facts with her psychotherapist that are relevant to the issues at trial." *United States v. Murra*, 879 F.3d 669, 680 (5th Cir. 2008). "[A]lthough a patient may not refuse to disclose any relevant fact within her knowledge merely because she discussed those facts in a confidential communication with her psychotherapist, she cannot be compelled to answer the question, 'What did you say to your psychotherapist?'" *Id.* (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395–96 (1981)).

K.H. was forthcoming with factual responses to Vaughn's cross-examination, but she did not reveal any confidential communications. She admitted that she attended therapy following the sexual assault, but she did not testify to any privileged communications discussed with her therapists. Vaughn was aware of K.H.'s non-privileged statements to the Child Safety Center denying any sexual assault. He also knew that K.H. disclosed details of sexual assault to a therapist that were mentioned in the criminal affidavit. When asked, K.H. provided the names of her new providers and an estimate of how many times she discussed the sexual assault with them. She also admitted to the discrepancy between the affidavit and the initial Child Safety Center interviews. K.H. explained that she was too scared to admit the abuse at the interviews immediately following the assault.

We do not find that the disclosure to the circuit court waived the privilege in this case. Though the record is not clear on how or when the records were compelled from K.H.'s providers, the prosecution clearly stated that K.H. did not waive the privilege. It likewise emphasized that it did not have access to the records until the court ordered production.

8

Indeed, the dates of the subpoenas and timestamps indicate that the records were obtained near the time of the *in camera* review and well after the criminal information was filed. A claim of privilege is not defeated by a disclosure which was compelled erroneously or made without opportunity to claim the privilege. *See* Ark. R. Evid. 511. We conclude the therapy records and communications are privileged under Rule 503.

B.

We must now consider whether Vaughn is constitutionally entitled to disclosure of the privileged records. He contends this issue implicates the rights to confrontation and compulsory process under the Sixth Amendment and due process under the Fourteenth Amendment. He also asserts violation of our analogous provisions in Article 2, Sections 8 and 10 of the Arkansas Constitution.

Relying on *Jaffee*, we previously held that the psychotherapist privilege preempts the need to discover all admissible evidence. *See Johnson v. State*, 342 Ark. 186, 196–97, 27 S.W.3d 405, 412 (2000). In other words, the privilege is paramount to the need to gain access to the privileged material for evidentiary purposes. *Id.*; *see also Kinder v. White*, 609 Fed. App'x 126, 130 (4th Cir. 2015) ("the public benefit produced by the recognition of the psychotherapist-patient privilege is sufficiently weighty to trump the cost to the administration of justice of precluding the use of relevant evidence"). Vaughn seeks to distinguish *Johnson* on the basis that the prosecution had access to K.H.'s records. *See Johnson*, 342 Ark. at 197–98, 27 S.W.3d at 413. Given that the State cannot waive the patient's

9

privilege—and K.H. did not waive the privilege here—we do not find that distinction persuasive. *See supra*.

Under *Ritchie*, due process and compulsory process would require the State to turn over the evidence in its possession that is both favorable to Vaughn and material to guilt or punishment if the Arkansas statute allowed for disclosure. *See Holland*, 2015 Ark. 341, at 17, 471 S.W.3d at 189 (citing *Ritchie*, 480 U.S. at 52). Unlike the statute in *Ritchie*, however, the privilege of private psychotherapy records has not been qualified by the legislature. Indeed, it remains absolute. *See* Ark. R. Evid. 503; *compare Taffner v. State*, 2018 Ark. 99, at 12, 541 S.W.3d 430, 437 (statute allowing disclosure of certain DHS records requires *in camera* review under *Ritchie*). Moreover, the record does not show that the State truly had access to the records. Indeed, the prosecution stated it obtained the records only to comply with the court's disclosure order for *in camera* review. As the State points out, this assertion was unopposed by Vaughn below.

The right to confrontation under the Sixth Amendment guarantees a defendant an opportunity for effective cross-examination and the right to face those who testify against him. *See Ritchie*, 480 U.S. at 51 (plurality opinion). The *Ritchie* Court flatly rejected the claim that a defendant is entitled to access confidential records simply to aid in cross-examination: "[T]he Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish.'" *Id.* at 53, (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original)). The Court specifically noted the ability to question adverse witnesses does not

10

include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. *Id.* at 53. Indeed, the Confrontation Clause has never been recognized as an independent method of enforcing pretrial disclosure of impeachment information. *United States v. Wright*, 866 F.3d 899, 912 n.3 (8th Cir. 2017) (citing *Ritchie*, 480 U.S. at 52). Vaughn contends he needed access to the records to show that K.H. did not initially disclose the abuse and in fact denied it. He essentially seeks to bootstrap the trial right to confront witnesses into a pretrial discovery right. This claim does not place the right to confrontation at issue and thus we reject Vaughn's argument.

In sum, we reject Vaughn's argument that *Ritchie* requires an *in camera* examination of records and communications shielded by the absolute psychotherapist-patient privilege.

Affirmed; court of appeals opinion vacated.

HART and WYNNE, JJ., dissent.


JOSEPHINE LINKER HART, Justice, dissenting. I dissent. In sum, where a charge of sexual assault only comes after nearly a year of prompting and pruning by the victim's counselor, before which the victim had specifically and repeatedly denied that any sexual assault had ever occurred, there is no fair trial for the defendant unless he has access to the victim's counselor and related counseling records.

I. *Background*

Tracy Vaughn stands convicted of a sex crime based on the allegation that he touched K.H.'s vagina for purposes of "sexual gratification" while he was giving her a bath. This

11

allegation against Vaughn did not come from K.H., at least not initially. The State's pursuit of Vaughn began after the father of one of K.H.'s friends, upset after learning his daughter had been skinny-dipping with K.H. in the pool at Vaughn's residence, made a report to police. Vaughn submitted to an interview with police on June 13, 2016—an interview which quickly turned into an interrogation. Despite the interrogation continuing for hours on end, with the officers repeatedly accusing Vaughn and baiting him to acknowledge some form of guilt,[1] Vaughn admitted to no criminal activity. One of the many things that came up during Vaughn's interrogation was the aforementioned incident in the bathtub. Vaughn acknowledged giving K.H. a bath, but he denied that any touching was for the purpose of sexual gratification.

K.H. was also interviewed by State investigators. Whatever the substance of that interview was, the State apparently deemed K.H.'s account insufficient to commence a criminal prosecution, as no charges were filed against Vaughn at that time. However, K.H. was then sent to a private counselor, and the records from those counseling sessions are contained in the record on appeal.

As did the dissent in *Johnson v. State*, I find the content of these counseling records too important to ignore. 342 Ark. 186, 204–05, 27 S.W.3d 405, 417 (2000) (Brown, J., dissenting). Vaughn's theory of defense at trial was that K.H.'s allegations of sexual contact were false and spurred by other adults in the wake of the skinny-dipping revelation. The

---

[1]The trial judge noted from the recording that the interrogating officer was "making somewhat of a fool of himself."

12

contents of these counseling records reveal a great deal of evidence that would have been relevant to and supportive of Vaughn's theory.

The records show that for the first several months of counseling, K.H. specifically and repeatedly denies that Vaughn had ever touched her inappropriately. They also show that by around the six-month mark, the counselor had begun prodding K.H. and her mother to let the counselor know about any "new memories" K.H. may have. After nearly another six months of this treatment, K.H. reportedly tells her counselor, "I'm going to come clean," reporting what the counselor describes as "three new parts" of her sexual abuse, one of which is apparently the bathtub incident. The counselor notes, "Client was scared to tell mom 3 new parts of the sexual abuse. With my help, client told mom about 'Meany' … Mom reacted appropriately and praised client for sharing with her and being brave." The counselor then helps K.H. turn her account into a written "trauma narrative" from which she could deliver these allegations to State authorities. On February 21, 2018, nearly two years after Vaughn and K.H. were initially interviewed, the State filed one count of second-degree sexual assault and three counts of sexual indecency against Vaughn, with the supporting affidavit specifically noting that the allegations were "recently disclosed during [K.H.'s] therapy session."

True or not—it appears that K.H.'s sexual-contact allegations against Vaughn were born, grown, and pruned during these sessions with the counselor. At trial, the defense should have been able to present this information to the jury to aid in its assessment of the truth.

13

Specifically, the defense should have been able to use prior inconsistent statements contained in the counseling records to test the credibility of K.H.'s allegations of sexual contact. The defense should have been able to illustrate the specific timing and evolution of K.H.'s allegations, and to show alternative sources where the information contained in those allegations may have come from. Importantly, the defense (who was prohibited from even knowing the identity of K.H.'s counselor) should have been able to subpoena the counselor to the courtroom, and to examine the counselor about her continuing requests for "new memories" from K.H. and her mother. The defense should have been able to ask about the counselor's methodology, and to potentially bring in an expert of his own to show whether the counselor's methodology might have led to a false accusation.

The jury should have heard all this information, but it didn't. All it heard about the counseling was that K.H. had previously denied the allegations. The rest of the evidence was kept from both the defense and the jury based on an assertion of K.H.'s psychotherapist privilege. But even without his best evidence, Vaughn successfully defended against three of the four charges at trial, and the jury gave Vaughn the minimum sentence for the one charge he was convicted of. If Vaughn had been able to use the information from the counseling to support his defense, the jury may very well have acquitted him.

## II. *Federal Constitutional Rights*

Withholding this information from Vaughn and from the jury violated Vaughn's constitutional rights. As the Supreme Court of the United States has observed, Vaughn has a constitutional right to present a complete defense at trial:

14

Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, *Chambers v. Mississippi*, [410 U.S. 284 (1973)], or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, *Washington v. Texas*, 388 U.S. 14, 23 (1967); *Davis v. Alaska*, 415 U.S. 308, (1974), the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S., at 485; cf. *Strickland v. Washington*, 466 U.S. 668, 684–685 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment"). We break no new ground in observing that an essential component of procedural fairness is an opportunity to be heard. *In re Oliver*, 333 U.S. 257, 273 (1948); *Grannis v. Ordean*, 234 U.S. 385 (1914). That opportunity would be an empty one if the State were permitted to exclude competent, reliable evidence bearing on the credibility of a confession when such evidence is central to the defendant's claim of innocence. In the absence of any valid state justification, exclusion of this kind of exculpatory evidence deprives a defendant of the basic right to have the prosecutor's case encounter and "survive the crucible of meaningful adversarial testing." *United States v. Cronic*, 466 U.S. 648, 656, (1984). See also *Washington v. Texas*, supra, 388 U.S., at 22–23.

*Crane v. Kentucky*, 476 U.S. 683, 690–91 (1986) (parallel citations omitted). Further,

Vaughn has a constitutional right to exculpatory and impeachment material within the

State's possession. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that the

suppression by the prosecution of evidence favorable to an accused upon request violates

due process where the evidence is material either to guilt or to punishment, irrespective of

the good faith or bad faith of the prosecution."). He also has a constitutional right to an in

camera hearing to determine whether information subject to State confidentiality law

contains any such exculpatory or impeachment material. *Pennsylvania v. Ritchie*, 480 U.S. 39

(1987).

Haling Vaughn to trial on these allegations while denying him access to any of the related counseling information violates the aforementioned constitutional guarantees. Vaughn has not even received the in camera review contemplated by *Ritchie*, or at least he did not receive a ruling on whether there was any exculpatory or impeaching material contained in the counseling records. The trial judge did note that there were "significant pages" that would be of interest to the defense contained in the counseling records, and placed them under seal for the record on appeal.

Note that there was no physical or medical evidence of any sex crime in this case. The only direct evidence was the allegation of sexual contact by K.H., and that allegation only came after a year's worth of undying efforts from K.H.'s counselor. If what the counselor finally procured from K.H. is the version of events that is to be believed, after K.H. had so repeatedly denied those very same allegations, then the substance of the counselor's actions should have been part of the evidence presented to the jury. Without that, there is no fair trial in a case like this one. Put simply, the State's case against Vaughn has not withstood the "crucible of meaningful adversarial testing." *Crane*, *supra*. There is no valid state justification for withholding this evidence from the defense in this case, and refusing to remedy this violation invites the State to use private counseling as an inaccessible surrogate for a proper law enforcement investigation.

For these reasons, Vaughn's conviction cannot stand. Procedurally, because the trial judge never ruled as to whether the records contained any exculpatory or impeaching information, we should reverse and remand for further proceedings from that point in the

16

litigation. Surely Vaughn is at least entitled to the constitutional protection afforded to the appellant in *Ritchie*.

III. *Psychotherapist Privilege under Arkansas State Law*

As a matter of state law, there are problems with the assertion and acknowledgement of privilege over K.H.'s counseling records.

A. Attachment

First, there is at least a question of fact as to whether privilege attached to the communications between K.H. and the counselor in the first place. Rule 503 of the Arkansas Rules of Evidence, which details the physician-patient privilege and connected rules, states:

> A patient has a privilege to refuse to disclose and to prevent any other person from disclosing his medical records or confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Ark. R. Evid. 503(b). The privilege may be claimed by the patient, his guardian or conservator, or the personal representative of a deceased patient, and a patient has a privilege to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his mental or emotional condition. Ark. R. Evid. 503(c); *White v. State*, 367 Ark. 595, 242 S.W.3d 240 (2006). However, Rule 503(b) does not grant a privilege to "any information," only "communications" between the patient and doctor, and confidential ones at that. *Id.*

Rule 503 further provides in pertinent part:

(a)(4) A communication is "confidential" if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Note that privilege is only available for confidential communications "made for the purpose of diagnosis or treatment," and communications are only confidential where they are "not intended to be disclosed to third persons[.]"

Here, it challenges reason to simply accept that K.H.'s communications with the counselor are privileged. In light of K.H.'s initial and continued denials of any wrongdoing by Vaughn, there is a very real question as to whether K.H. was sent to counseling for purposes of "diagnosis or treatment," or whether she was sent there to be groomed into a complaining witness. Further, one cannot say that the communications between K.H. and Vaughn were confidential, as there is every indication that the communications were intended to be disclosed to State investigators. K.H. interviewed with State investigators about these very same allegations, then she was sent to counseling, and then eventually she was sent back to State investigators after she "came clean" during counseling. These are factual issues into which the defense, especially in a case like this one, must be able to inquire.

B. Waiver

To the extent the communications between K.H. and the counselor were privileged, the privilege was waived by the time Vaughn was charged and brought to trial. Ark. R. Evid. 510 provides as follows:

18

A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.

The supporting affidavit from Vaughn's charging document makes it plain: the State charged Vaughn after being presented with allegations by K.H. that were "recently disclosed during her therapy session." The information developed during the counseling sessions is the same information the State used to charge Vaughn—certainly a "significant part of the privileged matter." Accordingly, any privilege over the evidence in question was waived, and the circuit court's withholding of the evidence on that basis was erroneous.

IV. *Conclusion*

For the reasons set forth above, we should reverse and remand for further proceedings. In the meantime, perhaps the Supreme Court of the United States could address what seems to be an increasingly prevalent situation: Where allegations against a defendant were developed in a purportedly privileged setting, does the defendant (and the jury) get to know how those allegations developed, or does the assertion of privilege defeat the defendant's right to support his defense?

I dissent.

**ROBIN F. WYNNE, Justice, dissenting.** Because I believe that a criminal defendant's constitutional right to present a complete defense must outweigh the psychotherapist-patient privilege, I respectfully dissent. Of course, it is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and

material to guilt or punishment. *Brady v. Maryland*, 373 U.S. 83 (1963). In *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), the plurality expressed no opinion on whether the result "would have been different if the statute had protected the CYS files from disclosure to *anyone*, including law-enforcement and judicial personnel." *Ritchie*, 480 U.S. at 57, n.14. The result should be the same. The privilege must yield to a criminal defendant's constitutional rights. I would reverse and remand for the circuit court to conduct an in camera review of the counseling records.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.