Cite as 2021 Ark. 166

# SUPREME COURT OF ARKANSAS
**No.** CR–20–505

| | | |
|---|---|---|
| | | **Opinion Delivered:** September 30, 2021 |
| CLARENCE TURNBO | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [NO. 60CR-18-607] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE LEON JOHNSON, JUDGE |
| | | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

Clarence Turnbo was convicted of rape after a jury trial. The victim, thirteen years old, met him online and later went to his place of business where they had sexual intercourse. DNA evidence corroborated this. Turnbo does not challenge the sufficiency of the evidence. But he raises three issues on appeal.[1] First, he argues the circuit court should have rejected the State's race-neutral justification for striking an African American from the jury pool. Second, he claims the court should have admitted evidence about the victim's prior allegations of sexual assault. Last, he contends he had a right to access the victim's psychiatric records from a private behavioral hospital.

---

[1] We accepted this case on certification from the court of appeals to resolve an earlier motion to rescind appellant counsel's access to the victim's psychiatric records on appeal. The court of appeals granted counsel's motion for access on September 9, 2020, and this court's clear directive on the issue was explained in *Vaughn v. State*, 2020 Ark. 313, 608 S.W.3d 569, published on October 8, 2020. Although this court did not rescind the access, or attempt to unring the bell, the initial granting of the motion of appellant's counsel for access was in error.

We affirm on all points. The circuit court did not err when it accepted the State's race-neutral justification for striking an African American juror—having watched the proceedings firsthand, the circuit court is in a much better position to weigh the credibility of the State's race-neutral justification. Nor did the circuit court err when it blocked inquiry into the victim's prior allegations of sexual assault and psychiatric records. This potentially inflammatory evidence about past allegations had little probative value, and the psychiatric records were protected by psychotherapist-patient privilege.

I. *Jury Selection*

On the morning of trial, eighteen potential jurors were selected for initial questioning by the parties. Juror Aaron, Juror Labron-Austin, and Juror Bell were the only African Americans called in the first eighteen-person panel. After questioning from the State and Turnbo's counsel, the State used its peremptory strikes to remove the three African Americans from the panel. Turnbo accordingly raised a *Batson* challenge.

After the *Batson* challenge, the State gave its race-neutral justifications for the strikes. First, it explained it struck Juror Aaron because he had been charged with a crime and suggested throughout voir dire that he would rather be at work than participate on the jury. Next, the State said that Juror Bell was nonreceptive to its questions. The State also explained Juror Bell noted in her questionnaire that she had a physical impairment that would prevent her from serving. But when the State asked about impairments during voir dire, Juror Bell failed to disclose it. Last, the State explained that it struck Juror Labron-Austin because, during questioning, she gave limited responses to the State but was much more responsive and engaged when the defense questioned her.

The court accepted the State's race-neutral justifications for striking Juror Aaron and Juror Bell. But the court rejected the State's explanation for Juror Labron-Austin. Turnbo's counsel argued that because the court rejected the race-neutral justification for one juror, the court should also reject the race-neutral justification for the other jurors: "[B]ecause . . . the Court found Ms. Labron-Austin . . . was struck without a race neutral reason or sufficient race neutral reason, I believe that that necessarily means that the other two were also struck based on the color of their skin." The circuit court did not change its ruling in response to this argument.

On appeal, Turnbo argues only that the circuit court erred in accepting the State's race-neutral reason for striking Juror Bell. Turnbo does not challenge the striking of Juror Aaron. We hold that the circuit court's ruling upholding the State's strike was not clearly against the preponderance of the evidence and affirm. *Travis v. State*, 371 Ark. 621, 628, 269 S.W.3d 341, 346 (2007) (explaining standard of review).

Under *Batson v. Kentucky*, the State cannot use peremptory challenges to strike jurors based on race. 476 U.S. 79 (1986). Arkansas has adopted a three-step process to address a *Batson* challenge. *MacKintrush v. State*, 334 Ark. 390, 398, 978 S.W.2d 293, 296 (1998). The party challenging the strikes—here, the defense—has the burden to prove purposeful discrimination *Id*. Given that burden, the defense must first make a prima facie case of purposeful discrimination. *Holland v. State*, 2015 Ark. 318, at 4, 468 S.W.3d 782, 785.

Next, once that initial showing has been made, the State must give a race-neutral reason for the strike. *Id*. This reason must be more than a simple denial of intent to discriminate. *Jackson v. State*, 375 Ark. 321, 335, 290 S.W.3d 574 (2009). But the reason

3

"need not be persuasive or even plausible and . . . may even be silly or superstitious." *London v. State*, 354 Ark. 313, 320, 125 S.W.3d 813, 817 (2003). The State has no further obligation, however, to produce testimony or introduce evidence; instead, the burden of proof always stays with the party challenging the strikes. *Holland*, 2015 Ark. 318, at 5, 468 S.W.3d at 785. Last, the circuit court will decide whether the defense proved purposeful discrimination. *Id*. We largely defer to the circuit court's ruling on this point because whether the State gave a race-neutral reason should be measured by evaluating the prosecutor's demeanor and credibility, which the circuit court is in a much better position to do than we are. *See id*. at 6, 468 S.W.3d at 786.

As an initial point, Turnbo argues he proved discrimination because the State struck the only three African Americans placed on the initial panel. But a *Batson* challenge concerns more than just numbers: "[R]eliance on numbers alone is not sufficient to prove discriminatory intent." *London*, 354 Ark. at 321–22, 125 S.W.3d at 817. The State's decision to strike all three African American jurors really goes to the first part of the *Batson* inquiry, that is, whether a prima facie case of purposeful discrimination existed. Once established— which it was here—the State must provide a race-neutral reason for the strikes. Turnbo did not offer any evidence of intentional discrimination once the State provided its race-neutral explanations.

Apart from the numbers, Turnbo challenges the State's race-neutral reason to strike Juror Bell. The State explained it struck Juror Bell because (i) she did not engage during questioning and (ii) she did not disclose her physical impairment when the State asked the panel about impairments. Turnbo's argument appears to be that because the court rejected

4

the State's reason for striking Juror Labron-Austin (being nonresponsive) then the court had to seat Juror Bell too. But Turnbo glosses over the fact that the State proffered another race-neutral reason for the strike of Juror Bell—her failure to disclose a physical impairment that would prevent her from serving on the jury. This explanation is race-neutral on its face.

The circuit court found this explanation credible because it allowed the strike to stand. The circuit court demonstrated that it had thoughtfully considered each race-neutral justification the State offered and did not accept all of them at face value. The court accepted two reasons and rejected one. Given these facts, we affirm the circuit court's conclusion that the defense failed to prove the State had a discriminatory intent when it struck Juror Bell.

## II. *Rape-Shield Rule*

Turnbo argues next that the circuit court erred by ruling that the rape-shield rule prevented him from impeaching the victim with recanted prior allegations of sexual assault against a third party. We do not reverse a circuit court's decision on this issue absent clear error or a manifest abuse of discretion. As we find neither, we affirm.

During a pretrial hearing, Turnbo asked permission to impeach the victim at trial about other false allegations of sexual assault. Turnbo contended that the victim's mother told a social worker that the victim had made a prior allegation against a third party but later recanted that allegation. Turnbo wanted to question both at trial and possibly call the social worker as to prior statements given by the mother about the victim's recantations. Turnbo claimed this would not fall under the rape-shield rule because he only wanted the victim to admit that the prior allegations had been untrue, not to probe her sexual history. Yet at the pretrial hearing, the victim and her mother both denied that the victim had ever recanted

5

the prior allegations. The circuit court ruled any inquiry on this matter violated the rape-shield law and was inadmissible.

Under Arkansas Rule of Evidence 411(b), "evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true . . . is not admissible by the defendant . . . to attack the credibility of the victim." Even so, after holding a hearing and entering a written order, the circuit court can admit the evidence if (i) it is relevant and (ii) its probative value outweighs its inflammatory or prejudicial nature Ark. R. Evid. 411(c)(2)(C). Thus, the rule is not a total bar to evidence of a victim's sexual conduct but makes its admissibility discretionary with the circuit court under the procedures set out in the rule. *State v. Kindall*, 2013 Ark. 262, at 6, 428 S.W.3d 486, 490. In determining whether the evidence is relevant, the circuit court is vested with much discretion, and we will not overturn the circuit court's decision unless it constituted clear error or a manifest abuse of discretion. *Id*.

Under these circumstances, the evidence Turnbo sought to admit fell within Rule 411 because Turnbo sought to admit "evidence of a victim's prior allegations of sexual conduct" to attack her credibility, which is precisely what the rule addresses. The circuit court could admit the testimony if the probative value outweighed the prejudice. Yet here, the probative value was slight. The victim and her mother denied the recantation in their testimony at the pretrial hearing. Any contrary testimony by the social worker would be probative only to impeach the mother's credibility, not the victim's. As the mother was not a witness to the sexual assault, her credibility on the factual allegation had little probative value compared with the prejudicial effect of rape-shield evidence. Turnbo's argument

continues to be that he desired to prove the victim had lied, yet the impeaching evidence would only show the mother's possible untruthfulness.

Finally, we have not permitted this testimony in several previous cases. *See, e.g.*, *Kindall*, *supra*; *Bond v. State*, 374 Ark. 332, 288 S.W.3d 206 (2008); *Butler v. State*, 349 Ark. 252, 82 S.W.3d 152 (2002). Allowing this type of testimony risks creating a "trial within a trial" on whether the victim had recanted her prior allegation. *Kindall*, 2013 Ark. 262, at 8, 428 S.W.3d at 491. Requiring a victim to publicly air earlier sexual conduct unrelated to the charged crime with little probative value is what the rape-shield rule is designed to prevent. We find no clear error or manifest abuse of discretion and affirm the circuit court.

### III. *Access to Victim's Psychiatric Records*

The final issue involves Turnbo's request for the victim's psychiatric records from Methodist Behavioral Hospital. Turnbo argued the victim's private records could contain exculpatory evidence or evidence to impeach her credibility. Both the victim and the private hospital objected to disclosing the records. But the circuit court ordered the hospital to submit the records for *in camera* review. After reviewing the records, the court found the records contained no exculpatory information and did not provide them to Turnbo. After reviewing the records in preparing for appeal, Turnbo's counsel maintains the records contain exculpatory evidence in the form of recanted allegations of assault. Turnbo argues these records should have been turned over for use during trial.

We review the interpretation of a rule of evidence de novo. *Mendez v. State*, 2011 Ark. 536, at 4. We recently addressed access to the victim's private behavioral records held by a private third party in *Vaughn v. State*, 2020 Ark. 313, 608 S.W.3d 569. We noted Rule

of Evidence 503(b) establishes a psychotherapist–patient privilege. This privilege encourages transparent and open communication between patients and their therapists *Id.* at 6, 608 S.W.3d at 573. State statutes place this privilege on par with attorney-client privilege *Id.* Indeed, patients' private records of this nature, created within the relationship of their private provider, are not even subject to *in camera* review because the privilege is absolute. *Id.* at 11, 608 S.W.3d at 575.

Following our holding in *Vaughn*, we reiterate that Turnbo had no right to the victim's private psychiatric records from Methodist Behavioral Hospital. The victim asserted her right to keep these records confidential. These are private psychiatric records at a private facility. The records are privileged. We affirm on this final point.

Affirmed.

WYNNE and WEBB, JJ., concur.

**ROBIN F. WYNNE, Justice, concurring.** I agree with the majority that *Vaughn v. State*, 2020 Ark. 313, 608 S.W.3d 569, requires affirmance on the third point regarding Turnbo's entitlement to exculpatory or impeaching evidence found in the victim's psychiatric records. However, I continue to disagree with the holding in *Vaughn* for the reasons stated in my dissent in that case.

**BARBARA W. WEBB, Justice, concurring.** I agree that Clarence Turnbo's rape conviction must be affirmed. I write separately to address the majority's disposition of his third point on appeal regarding the victim's counseling records. Turnbo argues that the circuit court erred in finding that the victim's counseling records did not contain

8

exculpatory evidence. For the following reasons, I would hold that this argument is unavailing.

Prior to trial, Turnbo filed a "motion for in camera review of counseling records of P.H." The circuit court granted Turnbo's motion and conducted the requested in camera review. However, upon completion of its review, the court stated that it had found no exculpatory material.[1] Significantly, while performing its in camera review, the circuit court never permitted Turnbo or his trial counsel access to the records. This procedure precisely comported with the procedure mandated by the Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987).

The *Ritchie* Court acknowledged that there is tension between an accused's right to discover exculpatory information; a right to compulsory process; a right to due process; a right to confront witnesses; and the State's strong interest in maintaining confidential records. *Id*. It accommodated these disparate interests through requiring the trial judge to conduct an in camera review of the records. *Id*. Equally important, the *Ritchie* Court reversed the portion of the Pennsylvania Supreme Court's decision that allowed defense counsel to inspect the confidential records.

In my view, the circuit court's actions were entirely correct. Turnbo's trial counsel was not seeking to invade the confidential communication between the victim and her counselor.[2] Rather, Turnbo was seeking documentation from the record memorializing that

---

[1]This ruling is consistent with the circuit court's ruling on the rape-shield issue that this court has unanimously affirmed.

[2]The *Ritchie* Court, albeit in *dicta*, suggested that such communication could be "absolutely privileged."

9

the victim's mother had told a social worker at Arkansas Children's Hospital that the victim had made and recanted sexual-assault accusations involving other alleged perpetrators. Under Arkansas Rule of Evidence 503(a)(4), this documentation is not "confidential communication" because it was intended for disclosure to third persons.

Accordingly, I would affirm on this point because the circuit court's in camera review of the records afforded Turnbo all the due process to which he was entitled. *Ritchie* does not require, or even allow, Turnbo to conduct his own review of the records and challenge the circuit court's conclusions. *Id.* As with any evidentiary ruling, the circuit court's decision to exclude the evidence that Turnbo was seeking is reviewed under the abuse-of-discretion standard. *Vaughn v. State*, 2020 Ark. 313, 608 S.W.3d 569. An abuse of discretion does not simply require error in the circuit court's decision but also requires that the circuit court acted improvidently, thoughtlessly, or without due consideration in making that error. *Collins v. State*, 2019 Ark. 110, 571 S.W.3d 469. On the record before us, there is no basis to conclude that the circuit court abused its discretion with its ruling.

The fact that Turnbo's appellate counsel was able to review the victim's medical records, while unfortunate, should not be the *ratio decidendi* for disposing of this argument on appeal. The circuit court did not order disclosure, and appellate counsel is duty-bound to make the best argument he or she can with the record provided. Blame for including the victim's counseling records in the transcript lies elsewhere.

I respectfully concur.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.