Cite as 2024 Ark. 2

# SUPREME COURT OF ARKANSAS
**No.** CR–22–418

|  |  |  |
|---|---|---|
| | | **Opinion Delivered:** January 18, 2024 |
| JOHN FAULKNER | | |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NOS. 04CR-20-1968 & 04CR-20-1969] |
| V. | | |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE BRAD L. KARREN, JUDGE |
| | | AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

This is a direct appeal from multiple criminal convictions—rape, introduction of a controlled substance into the body of another, and tampering. Appellant challenges the sufficiency of the evidence for the tampering conviction, two evidentiary rulings, and two issues not raised to the circuit court. We hold that substantial evidence supported the tampering conviction and that the court did not abuse its discretion on the evidentiary issues. The other issues were not preserved. We accordingly affirm.

I. *Factual Background*

After a jury trial, John Faulkner was convicted of rape, introduction of a controlled substance into the body of another, and tampering.[1] At trial, the evidence showed that

---

[1] The rape and introducing-a-controlled-substance convictions were charged under case number 04CR-20-1968. The tampering conviction was charged under case number 04CR-20-1969. The court granted Faulkner's motion to join the charges, so they were tried in a single jury trial.

Faulkner injected the victim with ketamine and then had sex with her while she was physically helpless and unable to consent. Following the charges, Faulkner encouraged the victim to recant statements she had made to the police about the incident.

There were several evidentiary issues raised pretrial. Faulkner moved to introduce evidence of his prior sexual contact with the victim. At a hearing on the motion, a witness testified that Faulkner and the victim had been in a consensual relationship. Faulkner also proffered evidence that he and the victim had consensual sex. The circuit court denied Faulkner's motion to admit this evidence. The court found it irrelevant because the State's allegations were that Faulkner raped the victim while she was physically helpless; the court concluded whether the victim had consented in the past was not at issue.

The State also filed a pretrial motion to exclude evidence that Faulkner and the victim pursued marriage. The circuit court held a hearing and granted the motion. The court found the evidence would confuse the jury. While Faulkner and the victim had applied for a marriage license, the license was never returned and filed. The court noted that any attempt to discuss the issue surrounding the marriage license would be confusing to the jury. The court reiterated that the issue at trial would not be about the victim's consent.

At trial, the victim testified that she worked at a gas station. She said she met Faulkner, almost twenty years older, as a customer at the station. The two started text messaging. Eventually Faulkner showed up at her home uninvited. He told her he found where she lived by recognizing her car. The relationship developed over the next few weeks. During that time, Faulkner noticed signs of physical abuse on the victim from a prior relationship. Faulkner told the victim that she was possessed by a demon. The victim testified Faulkner

promised to "slay" the demon and protect her. Faulkner eventually moved into the victim's house, without invitation.

The victim also testified that she tried using ketamine at Faulkner's suggestion. Faulkner claimed the drug could help with her depression and anxiety. The victim testified that Faulkner injected ketamine into her arm. She said the result was "frightening" and that she never wanted to use it again. The victim eventually determined that Faulkner was having sexual contact with her. She awoke one time confused, without pants on, cramping, and with semen inside her body. She confronted Faulkner, who responded that she had pursued him, even though the victim testified she had no such memory. The victim reported this to the police. Faulkner subsequently gave a statement to the police and admitted using ketamine with the victim between ten and fifteen times and that he and the victim had been "making love."

After the victim made her police report, she said Faulkner threatened her and told her to recant. She testified as follows:

> STATE: Okay. What did the threat consist of?
>
> VICTIM: That what I told the cops needs to—I need to tell them I lied or that ever—everyone I loved would be killed.

The State introduced a telephone call between the two during which Faulkner urged the victim to recant:

> FAULKNER: You'll have to go to the police station and recant your statement.
>
> VICTIM: I have to go to the police station and do what?
>
> FAULKNER: Recant your statement. Say that you made—that you're wrong . . . you made it up or whatever.

The State also introduced voicemails Faulkner left on the victim's phone. One threatened to drop off incriminating videos at DHS about the victim. Another called the victim a liar. The victim said these voicemails made her uneasy.

Following all the evidence, the case was submitted to the jury. The jury returned guilty verdicts on all counts. The case proceeded to a sentencing hearing. Faulkner received a life sentence for the rape conviction, a twenty-year sentence for the introduction-of-a–controlled- substance conviction, and a twelve-year sentence for the tampering conviction. Faulkner then filed this appeal.

## II. *Law and Analysis*

We address three arguments Faulkner has made on appeal.[2] The first is a challenge to the sufficiency of the evidence for the tampering conviction. His second argument is that the court abused its discretion when it prevented Faulkner from introducing evidence about prior sexual acts between him and the victim. His final argument challenges the court's ruling to exclude evidence that Faulkner and the victim were married. We address each argument in turn.

## A. Tampering

The first issue involves the sufficiency of the evidence for the tampering conviction. Faulkner argues the evidence showed only that he asked the victim to recant her statement,

---

[2]Faulkner also makes two additional arguments never ruled on below. The first was about an affirmative defense of former prosecution for the tampering charge. The second was a similar argument about double jeopardy. These claims have been waived on direct appeal because they were not raised or ruled on below. *See Fink v. State*, 2015 Ark. 331, at 7, 469 S.W.3d 785, 789; *State v. Montague*, 341 Ark. 144, 147, 14 S.W.3d 867, 869 (2000) (holding appellant must raise double-jeopardy objection at trial in order to preserve issue for appeal).

not to testify falsely, which the statute requires. As relevant here, the statute reads as follows: "A person commits the offense of tampering if, believing that an official proceeding or investigation is pending or about to be instituted, he or she induces or attempts to induce another person to . . . [t]estify or inform falsely." Ark. Code Ann. § 5-53-110(a)(1) (Supp. 2019). In addressing this argument, we review only the evidence favorable to the verdict and in the light most favorable to the State; we will affirm if substantial evidence supported the verdict. *Hartman v. State*, 2015 Ark. 30, at 5, 454 S.W.3d 721, 725.

The victim testified that Faulkner told her to recant her statement to the police or that everyone she loved would die. On the recorded phone call introduced at trial, Faulkner said the victim should "recant" her statement to the police and tell them that she was "wrong" and that she "made it up or whatever." The State also introduced a voicemail from Faulkner to the victim in which Faulkner accuses her of being a liar.

On appeal, Faulkner argues that this evidence was insufficient to show that he induced the victim to testify or inform falsely. Rather, he contends that the evidence showed that he asked her to recant because her allegations were, in fact, untrue. In other words, Faulkner argues the greater evidence showed that the victim was lying about the allegations. But this is asking us to give greater credibility to Faulkner's case rather than the State's, and on appeal we view the evidence in the light most favorable to the State. The jury may believe the victim's allegations—and that by extension Faulkner's attempts to get her to recant were inducements to lie. The jury was free to believe the victim rather than any contrary testimony. This credibility issue rested with the jury rather than this court on appeal. *See Lockhart v. State*, 2017 Ark. 13, at 3, 508 S.W.3d 869, 872.

Faulkner cites two cases from other states where the appellate courts reversed tampering convictions. But in those cases, the defendants never told the witnesses to recant. In one case, the defendant told the victim to "drop the charges." *Washington v. Rempel*, 785 P.2d 1134, 1137 (Wash. 1990). In another case, the defendant told witnesses that "cooperation isn't recommended with the cops" and that he would "recommend not talking to [the police]." *Colorado v. Nozolino*, 350 P.3d 940, 943 (Colo. App. 2014). Faulkner went further, telling the victim she needed to recant a statement already given to the police, and he made threats. Even the *Rempel* court acknowledged that asking a witness to change testimony constitutes a much different fact pattern. 785 P.2d at 1137 ("Earlier cases are factually distinguishable. . . [where] the defendant asked the witness to not appear or alternatively change his testimony.").

In conclusion, the State presented substantial evidence to support that Faulkner attempted to induce the victim to testify falsely, and we affirm the tampering conviction.

## B. Rape Shield

Next, Faulkner challenges the circuit court's decision to deny his motion to admit evidence of prior consensual sexual relations between him and the victim. The court found this evidence inadmissible under the rape-shield rules. On appeal, Faulkner argues this evidence was necessary to impeach the victim's statements that she and Faulkner never had a voluntary, consensual relationship.

We review the circuit court's exclusion of rape-shield evidence under an abuse-of-discretion standard of review. *Vance v. State*, 2011 Ark. 392, at 6, 384 S.W.3d 515, 519. This discretion is "broad." *Id*. The rules provide, in part, that "evidence of specific instances

of the victim's prior sexual conduct with the defendant . . . is not admissible by the defendant . . . to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose." Ark. R. Evid. 411(b). Even so, after holding a hearing and entering a written order, the circuit court can admit the evidence if (i) it is relevant to a fact in issue and (ii) its probative value outweighs its inflammatory or prejudicial nature. Ark. R. Evid. 411(c)(2)(C); *Turnbo v. State*, 2021 Ark. 166, at 6, 629 S.W.3d 797, 801

We addressed a similar issue in *State v. Parker*, 2010 Ark. 173. There, as here, the defendant was charged with raping the victim while the victim was physically helpless. *Id.* at 5. We held any testimony about prior encounters between the victim and the defendant was irrelevant because "the victim could not have consented due to being physically helpless." *Id.* Likewise, Faulkner was charged with raping a victim who was either incapable of consent or was physically helpless. Per *Parker*, whether the victim and Faulkner had prior consensual sex is not relevant. The circuit court did not abuse its discretion when it denied Faulkner's motion to admit this evidence. Accordingly, we affirm on this point.

## C. Exclusion of Evidence

The last issue involves the circuit court's exclusion of evidence that Faulkner and the victim obtained and signed a marriage license and the circumstances surrounding its execution. Faulkner wanted to introduce it as evidence of the consensual relationship and motive. The court concluded the marriage license and accompanying evidence would confuse the jury and that it was irrelevant given that the victim's consent was not at issue. On appeal, Faulkner argues that the evidence would not have been confusing. He also

7

argues that the evidence could have undermined the victim's testimony that Faulkner was unwelcome in her home and that the two never had a consensual relationship.

We review a circuit court's decision to exclude confusing or misleading evidence under an abuse-of-discretion standard of review. *Kellensworth v. State*, 2021 Ark. 5, at 10, 614 S.W.3d 804, 810. This is a "high threshold that does not simply require error . . . but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Bishop v. State*, 2023 Ark. 150, at 10, 675 S.W.3d 869, 876. Under the rules of evidence, the court may exclude otherwise relevant evidence if, among other things, "its probative value is substantially outweighed by the danger of . . . confusion of the issues or misleading the jury." Ark. R. Evid. 403.

Here, after holding a hearing and listening to arguments from both the State and from defense counsel, the court concluded that the evidence of a marriage license would be confusing. The court questioned both attorneys about their positions and thoughtfully probed their responses. At the end of their presentations, the court issued a reasoned decision to exclude the evidence. The court noted that the relevance of the marriage license was marginal and that the circumstances of it were confusing. The court did not act thoughtlessly, improvidently, or without due consideration. As the court did not abuse its discretion, we affirm.

### III. *Rule 4-3(a)*

In compliance with our rules, we have examined the record for all objections, motions, and requests made by either party that the circuit court decided adversely to the appellant. Ark. Sup. Ct. R. 4-3(a). No prejudicial error has been found.

Affirmed.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Rebecca Kane*, Ass't Att'y Gen., for appellee.