2011 Ark. 427

**Clifford Mac RITTER, Appellant**

v.

**STATE of Arkansas, Appellee.**

No. CR 11–296.

Supreme Court of Arkansas.

Oct. 13, 2011.

Jerome Edward Larkowski, Little Rock, AR, for appellant.

Dustin McDaniel, Atty. Gen., Valerie Glover Fortner, Office of Atty. Gen., Little Rock, for appellee.

JIM HANNAH, Chief Justice.

Appellant Clifford Mac Ritter was convicted by a Scott County jury of two counts of first-degree murder and one count of committing a felony with a firearm. He received a sentence of two consecutive life terms, plus 180 months' imprisonment for the firearm charge. On appeal, Ritter contends that the circuit court erred in denying his motion to suppress evidence found in his residence because the premises to be searched were not identified with particularity, as is required by Arkansas Rule of Criminal Procedure 13.2(b)(iii) (2011). Ritter was sentenced to life imprisonment; therefore, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(a)(2) (2011). We affirm.

The record reveals the following facts. On May 13, 2009, David C. Fritschie and Charles F. Paluso were shot and killed in the driveway of a residence located at 34009 Arkansas State Highway 28 West. Fritschie was in the area working with a crew that was digging, installing, and burying water lines along the highway. Paluso, who lived nearby, had stopped to talk to Fritschie about the installation.

Members of the crew reported hearing gunshots from the area where Fritschie was working, and minutes later they saw a red Isuzu Rodeo pull out from the same area and drive toward them. The man driving the Rodeo, later identified as Ritter, spoke to the crew and said, "I just fired my gun down the road. I didn't scare you boys, did I?" After the crew members told Ritter that he had not scared them, Ritter became angry and shouted, "Are y'all diggin' across my place?" The crew members noticed the butt of a handgun on Ritter's hip and a shotgun on the seat in his vehicle.

Ritter left, and shortly thereafter, the crew's foreman found Fritschie and Paluso dead and called 911. When Scott County Sheriff Cody Carpenter responded to the scene, he interviewed a witness who told him that someone driving a red Isuzu Rodeo had previously left the scene. Then, Ritter drove up in a red Isuzu Rodeo. Sheriff Carpenter stated that Ritter approached him, said that he had heard sirens, asked what had happened, and asked if law-enforcement officers needed his help. Sheriff Carpenter testified that he detained Ritter, and that, although he had not told Ritter about the shootings, Ritter told him, "You're not pinning this shit on me."

Lieutenant Keith Vanravensway, an investigator for the Scott County Sheriff's Department, was among the law-enforcement officers present at the crime scene. He left the scene and returned to the police department, and based on his observations, statements from members of the work crew, and information he received from other law-enforcement officers, Lt. Vanravensway swore out an affidavit describing the premises to be searched:

on the premises known as, the *Rideout residence* or *34009 Hwy 28 West*, Waldron, Arkansas 72958, which is located from the Scott County Courthouse as follows: turn left (east) onto W. 1st St. from the courthouse and travel approximately .1 of a mile to the intersection of W. 1st St. and U.S. Hwy 71B (Main St.). Turn left (north) onto U.S. Hwy 71B (Main St.) and travel approximately 2.3 miles to the intersection of U.S. Hwy 71B and U.S. Hwy 71. Turn right (north) onto U.S. Hwy 71 and travel approximately .7 miles to the intersection of U.S. Hwy 71 and Arkansas State Hwy 28 West. Turn left (west) onto Arkansas State Hwy 28 West and travel approximately 17.2 miles to the said location, which is at *34009 Hwy 28 West* at

Coaldale, Arkansas in Scott County, Arkansas.

(Emphasis added.)

The affidavit also listed facts to establish grounds for the issuance of a search warrant.

On 05/13/09, sometime before 4:00 p.m., a call was received by dispatch to deputies at the Scott County Court House, stating that there were two men lying dead in a driveway, just off of Arkansas State Hwy 28 West in Coaldale, which is located in the western most part of Scott County, near the Arkansas/Oklahoma state line. The dispatcher stated that the caller had found the two men lying there, and stated that he (the dispatcher) was going to keep them on the line if at all possible. Deputies Terry Staggs and Joey Deer arrived on the scene first and checked out with the dispatcher over the radio. When Investigator Todd Garzon and I arrived on the scene, I observed a grey, Ford Ranger pickup with Arkansas license plate 233NTH mounted on the rear bumper, parked in the driveway at 34009 W. Hwy 28 and facing north, a set of railroad tracks sitting to the north of Ar. State Hwy 28 W., running parallel to Hwy. 28 W., and a yellow backhoe parked between Ar. State Hwy. 28 W. and the railroad tracks. Next to the pickup, I observed one male subject lying on the east side of the Ford Ranger, face down with his head pointing to the south or rear of the pickup. I, also, observed a second male subject lying on the West side of the pickup, face-up with head pointed toward the north. I looked at the male subject lying on the West side of the pickup and observed that the subject appeared to have been shot in the face with a firearm, possibly a shotgun. I then observed two, yellow shotgun hulls lying on the ground, one near each of the two male subjects. I then looked at the subject on the east side of the pickup and observed that he, also, appeared to have been shot in the face/head with a shotgun. Both subjects appeared to have been deceased, with no sign of a pulse and very severe wounds to their faces. As I was observing the scene, I [sic] man that I am familiar with, namely, Mr. Clifford Ritter, who resides in the residence just to the east of the residence at 34009 Hwy 28 W., where the two deceased men were located, drove up to the scene in a Red, Isuzu Rodeo. Clifford Ritter asked me if he could help us (Scott County Sheriff's Office) with anything. I am familiar with Mr. Clifford Ritter, due to numerous calls from various citizens in the Coaldale area, concerning Mr. Ritter's behavior and criminal history. I am aware that Mr. Ritter has a criminal conviction of Manslaughter and the citizens of the Coaldale community are aware of this, as well. I have, personally, been called out to Clifford Ritter's residence, or in the area, on numerous occasions, usually concerning a man walking down the highway with a gun, threats being made to neighbors by Clifford Ritter, or similar calls. Under the circumstances, with two men lying shot to death in a driveway next to Mr. Ritter's residence, although circumstantial, and receiving information in the past from a relative of Mr. Ritter that Clifford Ritter almost always carries a pistol in the bib of his overalls, I believed that Mr. Ritter was a very likely suspect in this case. While speaking with Mr. Ritter, I observed a reddish, scrape mark on Mr. Ritter's right shoulder that appeared to be consistent with a mark made by the butt of a shotgun when it is fired and kicks the shoulder. During the initial interrogatories at the scene, a worker from the waterworks company

told Sheriff Cody Carpenter that he had noticed a vehicle (red Isuzu) leaving the scene or driveway, where the bodies had been located. The description of the said vehicle matched that of the vehicle that Mr. Ritter had driven up to the scene as deputies arrived. Furthermore, Clifford Ritter's spouse spoke with Arkansas State Police Investigator Cory Mendenhal, stating that she [sic] Mr. Ritter had left with a gun from the residence and returned to the residence with the gun about a half an hour later. Mr. Ritter then left the residence and his spouse stated that she put the gun under a mattress in the residence.

Based on Lt. Vanravensway's affidavit, the district judge issued a search warrant for "the premises known as the 34009 Ar. State Hwy 28 W. or the Rideout residence." Shortly after the warrant was issued, it was executed at Ritter's residence and several items, including a Browning shotgun, were seized.

A review of the warrant and affidavit reveals that the address listed by Lt. Vanravensway—34009 Hwy. 28 West—was the location where the victims' bodies were found rather than Ritter's address, which was 33601 Hwy. 28 West. Before trial, Ritter filed a motion to suppress evidence seized during the search of his home. In his motion, Ritter contended that he was subject to an unlawful arrest and that there was no probable cause upon which to support the search warrant. At the suppression hearing, Ritter stated that the search warrant listed an incorrect name and address and contended that the search warrant was invalid because it failed to describe with particularity the premises to be searched. Accordingly, he asserted that any evidence seized as a result of the search must be suppressed.

Lieutenant Vanravensway testified at the suppression hearing that he had sought a warrant for the Ritter residence. He also testified that he included facts in the affidavit regarding his familiarity with Ritter and information he had obtained from Arkansas State Police Special Agent Cory Mendenhal. According to Special Agent Mendenhal, Ritter's wife said that Ritter had left their residence with a gun and then returned with the gun approximately thirty minutes later. The affidavit also noted that Ms. Ritter told Special Agent Mendenhal that when her husband again left the residence, she took the gun inside and put it under a mattress. Lieutenant Vanravensway testified that he failed to write down Ritter's address while he was at the scene, so he phoned officers at the scene to obtain the address. He stated that one of the officers read him the name and address on the Rideout mailbox, so that was the name and address he used in the affidavit. Lieutenant Vanravensway testified that he used the Rideout name and address due to "confusion" and because he had a limited time to get a warrant issued before 8 p.m.[1] The warrant was signed at 7:59 p.m., and Lt. Vanravensway notified officers that he had obtained the warrant.

Chief Deputy Terry Staggs of the Scott County Sheriff's Office, along with other officers, waited at the Ritter residence while Lt. Vanravensway secured the warrant. Chief Deputy Staggs testified that he was present at Ritter's house when the search warrant was executed. He also testified that he had been to Ritter's house a few times and was familiar with the

---

1. A search warrant shall provide that it must be executed between the hours of six a.m. and eight p.m. unless there is a factual basis supporting the issuance of a warrant for a night-

time search. *See, e.g., Tate v. State,* 357 Ark. 369, 167 S.W.3d 655 (2004); Ark. R.Crim. P. 13.2(c).

property. Chief Deputy Staggs stated that he knew Ms. Ritter and had spoken to her during previous visits to the Ritter residence. He further stated that, while he was waiting at the Ritter residence to begin the search, he walked past Ms. Ritter and asked her how she was doing, and Ms. Ritter responded, "The gun you're looking for is under the mattress. There's [a] pillow case with some shotgun shells under there as well."

At the conclusion of the hearing, the circuit court denied Ritter's motion to suppress. The circuit court found that Lt. Vanravensway acted in good faith and that there was no mistake in the search. The circuit court also found that Ms. Ritter's comment to Chief Deputy Staggs that "[t]he gun you're looking for is under the mattress" amounted to consent or the implicit permission of Ms. Ritter to search the property. Finally, the circuit court found that probable cause existed to search Ritter's residence.

■ Ritter contends that the circuit court erred in denying his motion to suppress because the premises to be searched were not identified with particularity in the search warrant as required by Arkansas Rule of Criminal Procedure 13.2. He contends that, because the name and address in the search warrant incorrectly identified his residence, police officers had no authority to enter his property.

■ When reviewing the denial of a motion to suppress evidence obtained from an alleged illegal seizure, this court conducts a de novo review based on the totality of the circumstances. *E.g., Wagner v. State,* 2010 Ark. 389, 368 S.W.3d 914. We will reverse a circuit court's ruling denying a motion to suppress only if the ruling is against the preponderance of the evidence. *E.g., Dunn v. State,* 371 Ark. 140, 264 S.W.3d 504 (2007).

■ The Fourth Amendment to the United States Constitution provides in pertinent part that no search warrants shall issue except those "particularly describing the place to be searched." An application for a search warrant "shall describe with particularity the . . . places to be searched and the . . . things to be seized." Ark. R.Crim. P. 13.1(b). And a "warrant shall state, or describe with particularity . . . the location and designation of the places to be searched." Ark. R.Crim. P. 13.2(b)(iii). The requirement of particularity of describing the location and place to be searched is to avoid the risk of the wrong property being searched or seized. *E.g., Beshears v. State,* 320 Ark. 573, 898 S.W.2d 49 (1995). The test for determining the adequacy of the description of the place to be searched under a warrant is whether it enables the executing officer to locate and identify the premises with reasonable effort and whether there is any likelihood that another place might be mistakenly searched. *E.g., Costner v. State,* 318 Ark. 806, 887 S.W.2d 533 (1994). In determining whether a particular description is sufficient under this test, courts must use common sense and not subject the description to hypercritical review. *Beshears, supra.* Highly technical attacks on search warrants are not favored because the success of such attacks could discourage law-enforcement officers from utilizing search warrants. *E.g., Walley v. State,* 353 Ark. 586, 112 S.W.3d 349 (2003).

■ A search warrant is not automatically rendered invalid if it contains an incorrect address of the property to be searched. *Id.* In *United States v. Gitcho,* 601 F.2d 369 (8th Cir.1979), the federal district court granted the defendant's motion to suppress because the only description of the location to be searched was an incorrect street address listed in the warrant; the government appealed. The

United States Court of Appeals for the Eighth Circuit reversed:

> The address stated in the warrant, although technically incorrect, was reasonable for the location intended. *See United States v. Sklaroff,* 323 F.Supp. 296, 320–321 (S.D.Fla.1971). The address stated in the warrant does not exist, making the mistaken search of the wrong premises unlikely. Of even greater importance is the fact that the agents executing the warrant personally knew which premises were intended to be searched, and those premises were under constant surveillance while the warrant was obtained. The premises which were intended to be searched were, in fact, those actually searched. *See United States v. Prout, supra* [526 F.2d 380,] at 388 [ (5th Cir.1976) ]; *United States v. Darensbourg, supra* [520 F.2d 985,] at 988 [ (5th Cir.1975) ].

*Gitcho,* 601 F.2d at 372.

In the present case, the warrant contained an incorrect address, thus increasing the likelihood of searching the wrong residence. But this likelihood was mitigated by the fact that the officers executing the warrant personally knew which premises were to be searched and the fact that the intended location was under surveillance while Lt. Vanravensway secured the warrant. In addition, the affidavit included facts indicating that it was the Ritter residence, not the Rideout residence, that was intended to be searched. After listing numerous facts about Ritter and referring to the Ritter residence, Lt. Vanravensway noted that Special Agent Mendenhal had learned from Ms. Ritter that Ritter had left their residence with a gun and returned approximately thirty minutes later, still carrying the gun. The affidavit also stated that Ms. Ritter told Special Agent Mendenhal that she had placed the gun under a mattress in the Ritter residence. Moreover, Chief Deputy Staggs testified that, while waiting to begin the search, he walked past Ms. Ritter and asked her how she was doing, and Ms. Ritter told him, "The gun you're looking for is under the mattress. There's [a] pillow case with some shotgun shells under there as well." Ms. Ritter's statement, made shortly before the warrant was executed at the Ritter residence, further mitigated the likelihood that the officers were at the wrong residence. Finally, the premises that were intended to be searched were, in fact, searched. We hold that the circuit court did not err in denying Ritter's motion to suppress.

The record in this case has been examined for reversible error in accordance with Arkansas Supreme Court Rule 4–3(i) (2011) and none has been found.

Affirmed.

DANIELSON, J., not participating.