Cite as 2021 Ark. 5

# SUPREME COURT OF ARKANSAS

**No.** CR-19-684

|  |  |
|---|---|
| BOBBY KELLENSWORTH<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered:** January 21, 2021<br><br>APPEAL FROM THE GRANT COUNTY CIRCUIT COURT [NO. 27CR-17-76]<br><br>HONORABLE EDDY EASLEY, JUDGE<br><br><u>AFFIRMED; COURT OF APPEALS' OPINION VACATED</u>. |

**RHONDA K. WOOD, Associate Justice**

A jury convicted Bobby Kellensworth of multiple drug crimes, including two counts of possession of a controlled substance. On appeal, Kellensworth argues insufficient evidence supported these convictions because the State's expert identified the drugs only by visual inspection. Kellensworth also argues the court should have granted his motion to suppress because the warrant misidentified his physical address. And even if the court ruled correctly on his motion to suppress, he contends he should have been able to tell the jury about the warrant's flaws. We affirm on all points.

## I. *Factual Background*

This case started as a drug investigation. Agents Smith and Keathley, Grant County drug-taskforce officers, planned two controlled drug buys with a confidential informant. The informant called Kellensworth and asked if he would sell methamphetamine. Kellensworth said yes, so the informant drove to Kellensworth's mobile home, walked

inside, bought the drugs, and left. The agents observed this first buy from their car. Days later, the informant called Kellensworth again, and the two agreed on a price for more drugs. The informant drove to Kellensworth's mobile home and bought the drugs. Agent Keathley watched this second buy from a distance.

Based on this information, Agent Smith prepared a search-warrant affidavit for Kellensworth's mobile home. Agent Smith listed Kellensworth's address as "354 Grant 52." He described the mobile home as a "light brown and tan in color trailer house" located "approximately one mile West of the intersection of Grant 52 and 53 on the North side of Grant 52." Agent Smith testified he got the physical address from an ACIC database search. The agent said he never saw a mailbox, which is how he usually learns an address. After the judge signed the warrant, both Agents Smith and Keathley went to Kellensworth's home— the location where they observed the drug buys—conducted a search, and found, among other drugs, two different sets of prescription pills wrapped in cellophane. The agents sent the pills to the crime lab for identification.

The State filed criminal charges against Kellensworth, including two counts of possession of a controlled substance. Kellensworth moved to suppress, arguing the search warrant was defective because the agents misidentified his address. Kellensworth's uncontroverted testimony was that he lived at "386 Grant 52," not "354 Grant 52" as listed on the search warrant. Kellensworth also noted his residence was 0.4 miles from the Grant 52/53 intersection rather than "approximately one mile" as described in the warrant. The circuit court denied the motion. The court ruled the wrong address did not justify

suppression because both agents testified the home they searched was the same one where they observed the controlled buys.

At trial, the wrong-address issue arose again when the State moved to exclude testimony about the mistake. Kellensworth responded that the evidence would be relevant to the agents' credibility and professional competence. The circuit court excluded this testimony, concluding it would "be more confusing to [the jury] than relevant." Kellensworth could neither cross-examine the agents about the wrong address nor tell the jury about the mistake during opening and closing statements.

Another issue at trial was whether the State proved the pills were controlled substances. A forensic chemist from the Arkansas State Crime Laboratory testified as an expert on this point. The chemist had testified in over 100 cases in 30 years. The chemist said the two sets of pills recovered from Kellensworth's home were, in his professional opinion, oxycodone and hydrocodone. The chemist's conclusion followed his common practice of comparing the pills' imprint logos with an online database, drugs.com. The chemist said the pills did not show signs of tampering that would require further analysis:

> I didn't see anything in the tablet that would've indicated that maybe it was an [illicit] tablet. We are trained to look for the little marks and identification that says [*sic*], "Okay, this may not be what it is," in which case, I would've tested it, if it was outside of that—those [parameters].

Kellensworth moved for a directed verdict and argued the chemist's visual confirmation alone could not constitute substantial evidence that the pills were controlled substances. The circuit court denied the motion.

The jury returned a guilty verdict on all charges. Kellensworth received a cumulative sentence of eighty years in prison. On direct appeal, the court of appeals affirmed in part

3

and reversed and dismissed in part. *Kellensworth v. State*, 2020 Ark. App. 249, 600 S.W.3d 622. We granted the State's petition for review and now resolve the appeal as if it had been filed here first. *Kilgore v. Mullenax*, 2017 Ark. 204, 520 S.W.3d 670

## II. *Sufficiency of Evidence*

Kellensworth first argues insufficient evidence supported his controlled-substances convictions. Kellensworth highlights the chemist's reliance on a visual identification alone, rather than chemical testing, and asserts the State failed to prove the pills were indeed oxycodone and hydrocodone. To resolve this issue, we must decide whether the State must identify drugs by chemical analysis or whether circumstantial proof can satisfy the State's burden. From there, we consider whether sufficient evidence supported the verdict in this case. We hold the State met its burden and affirm the circuit court's denial of the directed-verdict motion.

In addressing Kellensworth's sufficiency challenge, we view the evidence in the light most favorable to the State and will affirm if substantial evidence, direct or circumstantial, supported the verdict. *See Fink v. State*, 2015 Ark. 331, at 3, 469 S.W.3d 785, 787. To be substantial, the circumstantial evidence must exclude every reasonable hypothesis other than the accused's guilt. *Hartman v. State*, 2015 Ark. 30, at 5, 454 S.W.3d 721, 725. The question whether circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Ross v. State*, 346 Ark. 225, 230, 57 S.W.3d 152, 156 (2001).

The State does not have to use chemical analysis to prove the identity of a controlled substance. For example, we have held chemical analysis was not necessary to identify marijuana. *See Moser v. State*, 262 Ark. 329, 557 S.W.2d 385 (1977); *Springston v. State*, 327

4

Ark. 90, 936 S.W.2d 550 (1997). In *Moser*, the State did not chemically analyze the marijuana; rather, it presented lay testimony from witnesses who said the item they bought from the defendant and then smoked had been marijuana. 262 Ark. at 330, 557 S.W.2d at 386. We concluded "this lay testimony was competent evidence." *Id*. We reaffirmed this principle twenty years later in another marijuana case, holding "lay testimony may provide substantial evidence of the identity of a controlled substance, even in the absence of expert chemical analysis." *Springston*, 327 Ark. at 92, 936 S.W.2d at 551.

We need not treat controlled substances differently when they are pills instead of marijuana. Many states follow this approach. California provides one example. *See People v. Veamatahau*, 459 P.3d 10 (Cal. 2020). There, as here, the expert identified a pill—alprazolam—as a controlled substance by comparing the pill's imprint logo with a database. *Id*. at 14. The expert said this method was "generally accepted in the scientific community." *Id*. The California Supreme Court held this identification was proper and constituted circumstantial evidence that the defendant possessed the drug identified. *Id*. at 23.

Likewise, in a Kentucky case, two qualified and experienced chemists visually identified pills as alprazolam by comparing the imprint logos with a pharmaceutical database. *Jones v. Commw.*, 331 S.W.3d 249, 251 (Ky. 2011). The court recited its blackletter law that "chemical testing of an alleged controlled substance is not required to sustain a conviction" and noted "courts around the nation have uniformly held that circumstantial evidence" can support a [controlled-substance] conviction. *Id*. at 252–53. The court reasoned experts familiar with a substance can identify it without chemical analysis. *Id*. at 255. Applying these principles, the court affirmed the defendant's conviction because "sufficient circumstantial

evidence [supported] the jury's verdict." *Id.* at 256. In sum, most jurisdictions permit a controlled-substances conviction even without the type of direct proof chemical analysis would provide. *See Wallace v. State*, 130 So. 3d 212, 218–19 (Ala. Crim. App. 2013) ("[T]he vast majority of jurisdictions that have considered this issue agree that chemical tests are not necessary to obtain a drug-related conviction."); *see also State v. Youmans*, 383 P.3d 142, 147–48 (Idaho Ct. App. 2016) (holding chemical analysis not essential to prosecution of drug offense when police officer used online source to identify hydrocodone).

Kellensworth presents three out-of-jurisdiction cases trying to persuade us to alter our precedent. *See State v. Ward*, 694 S.E.2d 738 (N.C. 2010); *People v. Hard*, 342 P.3d 572 (Colo. App. 2014); *People v. Mocaby*, 882 N.E.2d 1162 (Ill. App. Ct. 2008). But these cases have important legal and factual differences from his case. For example, *Ward* concerned a ruling on the reliability of the particular methodology used. 694 S.E.2d at 745. Here, however, Kellensworth did not object to the chemist's methodology and limited his argument to the sufficiency of the evidence. *See Veamatahau*, 459 P.3d at 24 ("*Ward* is accordingly a case about reliability, not sufficiency of the evidence."). And the *Hard* case is distinguishable because it involved hearsay testimony from a police officer who was admittedly not a drug-recognition expert. 342 P.3d at 575–76.

While *Mocaby* is like Kellensworth's case, we find it unpersuasive. First, it falls outside the majority-view cases described above, including our own: none require "conclusive scientific analysis" to sustain a controlled-substances conviction. Second, the *Mocaby* court expressed concern that "the tablets could be look-alike substances." 882 N.E.2d at 1100. But here, the chemist testified that, in his professional opinion and experience, the pills

6

appeared to be genuine rather than fakes. Similar testimony did not appear in *Mocaby*. *Id.* Thus, the State presented some proof the oxycodone and hydrocodone were not, indeed, look-alikes.

In all, we conclude sufficient evidence supported both possession convictions. We see no reason to depart from our prior holdings that the State need not always submit a chemical analysis of a controlled substance. Circumstantial evidence can suffice. The chemist gave unobjected testimony that, in his professional opinion, the drugs were oxycodone and hydrocodone. The chemist said the pills showed no dubious markings that required him to do more testing. The chemist had testified in hundreds of cases and his methodology stood unchallenged. The jury appropriately relied on the chemist's testimony to reach its verdict.

Kellensworth raised no evidentiary objections to the expert's testimony. Indeed, Kellensworth tested the chemist's testimony very little on cross-examination and never asked the chemist to explain this reliance in more detail, which could have been a much more helpful defense. This failure to aggressively cross-examine the chemist is a "clear indication that the integrity" of the chemist's identification "was not in doubt by anyone in the courtroom." *Jones*, 331 S.W.3d at 255. It at least shows the evidence could only be interpreted one way—that the drugs were indeed hydrocodone and oxycodone. The chemist's testimony thus excluded any other reasonable hypothesis and constituted substantial evidence to support the controlled-substances convictions.[1]

---

[1]For the first time on appeal, Kellensworth argues only one conviction can stand because simultaneous possession of hydrocodone and oxycodone constitutes a single offense. We decline to address this point because one cannot raise issues, even constitutional ones, for the first time on appeal. *Holland v. Arkansas*, 2015 Ark. 318, at 3, 468 S.W.3d 782, 784.

III. *Motion to Suppress*

Next, Kellensworth argues the circuit court should have granted his motion to suppress because the search warrant was defective. The issue whether the wrong address and mileage error on the search warrant violated the particularity requirement requires us to view the totality of the circumstances; we will reverse only if the circuit court's ruling was clearly against the preponderance of the evidence. *See Johnson v. State*, 2015 Ark. 387, at 3, 472 S.W.3d 486, 488. We affirm the circuit court's denial because, as the court found, the evidence showed the mobile home the police searched was the same one where the two controlled buys occurred.

The Fourth Amendment and our rules of criminal procedure require warrants to "particularly describ[e] the place to be searched." Ark. R. Crim. P. 13.1(b). The intent is to prevent the police from searching or seizing the wrong property. *See Beshears v. State*, 320 Ark. 573, 579, 898 S.W.2d 49, 52 (1995). "The test is whether [the warrant] enables the executing officer to locate and identify the premises with reasonable effort and whether there is any likelihood that another place might be mistakenly searched." *Costner v. State*, 318 Ark. 806, 808, 887 S.W.2d 533, 534 (1994). We disfavor highly technical attacks on warrants so the police will be encouraged to use them. *Watson v. State*, 291 Ark. 358, 367, 724 S.W.2d 478 (1987). We use "common sense" instead; thus, when the same officer who applied for the warrant conducted the search, "the risk of misidentification is minimized." *Beshears*, 320 Ark. at 580, 898 S.W.2d at 52.

Here, Agent Keathley twice watched the informant enter Kellensworth's mobile home to buy drugs. Agent Smith watched once. Using this information, Agent Smith then

applied for the search warrant. Both agents executed the warrant in person. There was minuscule risk the agents would search the wrong mobile home. We have noted before that "a search warrant is not automatically rendered invalid if it contains an incorrect address of the property to be searched." *Ritter v. State*, 2011 Ark. 427, at 7, 385 S.W.3d 740, 744. There, we found the incorrect address on the warrant "was mitigated by the fact that the officers executing the warrant personally knew which premises were to be searched." *Id.* at 8, 385 S.W.3d at 745.

We reached the same conclusion in *Beshears* when the police officer surveilled the property, prepared the affidavit, and executed the warrant. 320 Ark. at 580, 898 S.W.2d at 52. Even though the warrant failed to describe the property with total accuracy, we upheld the search because "there was virtually no likelihood" the officer searched the wrong place. *Id.*; *see also Costner*, 318 Ark. at 809, 887 S.W.2d at 534–35 (holding risk of misidentification minimal where officer executing warrant had been to home).

As in *Ritter* and *Beshears*, Agents Keathley and Smith knew which mobile home they would search because they had been there before and sourced the warrant's underlying facts. And the only case Kellensworth can offer in opposition involved a warrant (1) whose information came from a confidential informant, (2) that described an apartment complex rather than a specific apartment number, and (3) that identified someone other than the defendant as the target. *See Perez v. State*, 249 Ark. 1111, 463 S.W.2d 394 (1971). In contrast, this search warrant stemmed from the agents' first-hand investigation of Kellensworth's single-family residence. The address and mileage errors were unlikely to

cause the agents to search the wrong house. To conclude otherwise would amount to a highly technical review of the warrant, which we will not do.

## IV. *Exclusion of Evidence*

As his final point, Kellensworth argues he should have been able to present testimony at trial—in opening, closing, cross-examination, or in his case-in-chief—about the wrong address on the search warrant. The circuit court excluded this evidence because it would confuse the jury. The issue is whether the circuit court abused its discretion—a high bar—and whether the exclusion violated Kellensworth's constitutional right to present a defense. We find no abuse of discretion and affirm.

"All relevant evidence is admissible." Ark. R. Evid. 402. Even so, the circuit court can exclude relevant evidence "if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury." Ark. R. Evid. 403 (cleaned up). The circuit court has broad leeway to control the admission of evidence, and we won't overturn its decision absent a manifest abuse of discretion. *See Barefield v. State*, 2019 Ark. 149, at 4, 574 S.W.3d 142, 145. This standard of review "is a high-threshold that does not simply require error . . . but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Atwood v. State*, 2020 Ark. 283, at 17. A circuit court's exclusion of confusing evidence rarely implicates a defendant's constitutional right to present a defense: "The Constitution permits judges to exclude evidence that is repetitive, only marginally relevant, or poses an undue risk of harassment, prejudice, or confusion of the issues." *Schnarr v. State*, 2017 Ark. 10, at 8 (internal quotation marks omitted). In other words, a defendant has no constitutional right to confuse the jury.

Kellensworth argues the evidence about his correct mailing address "clearly related to the issue at hand" because he possessed the drugs in his house, rather than on his person. Kellensworth cannot show how an error on the face of the search warrant had anything to do with whether he possessed controlled substances. Nor does Kellensworth persuade us that the circuit court abused its discretion. In granting the State's motion to exclude, the circuit court noted it had denied Kellensworth's motion to suppress in which Kellensworth made a similar argument. The court had heard extensive testimony and was well acquainted with the issue. The court ruled the evidence about the address confusion "would be just misleading to the jury." The court clarified its ruling so that Kellensworth could present evidence he was not living in the place searched: "If you're going to present a defense to that," the court said, "I'm not going to rule you can't use that."

The cases Kellensworth cites involved the exclusion of evidence intimately related to the substantive crimes charged. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (reversing where court prevented the defendant from fully cross-examining a witness who confessed to the crime); *Patrick v. State*, 295 Ark. 473, 480, 750 S.W.2d 391, 394 (1988) (reversing where defendant in DWI case was prevented from admitting evidence of a negative breathalyzer test). Here, though, Kellensworth tried to relitigate a suppression issue at trial with evidence that had marginal, if any, relevance. Kellensworth could have offered actual evidence he did not live in the mobile home where the drugs were found. If he was going to present a defense, he should have presented one relevant to the substantive crimes charged. The circuit court did not abuse its discretion when it limited the evidence in this way.

Affirmed; court of appeals' opinion vacated.

*James Law Firm*, by: *Michael Kiel Kaiser*, and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *David L. Eanes Jr.*, Ass't Att'y Gen., for appellee.