Cite as 2023 Ark. 7

# SUPREME COURT OF ARKANSAS
No. CR-22-356

| | | |
|---|---|---|
| PHILIP WALLACE | | **Opinion Delivered:** February 9, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE MARK LINDSAY, JUDGE |
| | APPELLEE | |
| | | AFFIRMED. |

**BARBARA W. WEBB, Justice**

Philip Wallace appeals from a Washington County Circuit Court jury verdict finding him guilty of rape for which he received a life sentence in the Arkansas Department of Correction. On appeal, Wallace argues that (1) there was insufficient evidence to support his conviction for rape and (2) the State violated his constitutional rights by intentionally circumventing his right to confront vital witnesses by improperly allowing into evidence a surreptitious recording. Our jurisdiction is proper pursuant to Rule 1-2(a) of the Rules of the Supreme Court and Court of Appeals of Arkansas. We affirm.

## I. *Synopsis*

This case arises from the alleged rape of Wallace's two-year-old daughter on September 6, 2018. Wallace was charged under the rape formulation involving sexual intercourse or deviate sexual activity with a person under fourteen years of age. Ark. Code Ann. § 5-14-103(a)(3)(A) (Supp. 2017). "Deviate sexual activity" is defined by statute as any "act of sexual

gratification involving the penetration, however slight, of the mouth of a person by the penis of another person." Ark. Code Ann. § 5-14-101(1)(A) (Supp. 2017). According to police, the investigation of Wallace began when Wallace's roommate, Luis Santiago, took his phone to the Fayetteville Police Department. Detective Daniel Robbins testified that Santiago said that the device contained a recording that indicated physical abuse of a child. Santiago consented to the extraction of the audio file, which was approximately twenty-five minutes of a longer recording that was made during the evening of September 6–7, 2018, while Santiago was at work.

Sergeant Nick White of the Fayetteville Police Department testified that he used Cellebrite forensic software to copy the audio file that Santiago had on his cell phone. He vouched for the accuracy of the copy. Sgt. White further testified that he participated in the custodial interrogation of Wallace, and he opined that the voice on the recording was Wallace's. The other officer conducting Wallace's interrogation, Sergeant Hunter Carnahan, also confirmed that he recognized Wallace's voice on the recording.

During his interview with police, Wallace admitted that he was aware of Santiago's practice of placing recording equipment in the residence. Wallace stated that Santiago thought that Wallace's wife was unhappy with Santiago staying at the apartment, and he wanted to know what was being said about him. When Wallace was confronted with the recording of his encounter with his daughter, he was devastated by what it revealed. Wallace admitted that he continued to masturbate with his daughter in his presence and claimed that she refused to stop grabbing his penis. Although he attempted to minimize his role in the encounter, he admitted

2

that he "shouldn't have got it (semen) in her mouth."

Debbee Deckard from the Children's Safety Center in Springdale testified that she interviewed the victim the day after the alleged rape and recognized the young girl's voice on the recording. For the purpose of authenticating the recording provided by Santiago, the State offered a brief excerpt from the video of Deckard's interview with the victim because it provided a voice exemplar. That part of the interview was only an introductory section in which Deckard asks the alleged victim about her age, family, and living situation. However, at the request of the defense, the video of the entire interview was played for the jury. During the interview, the victim did not implicate her father in the alleged rape. Having heard the victim's voice during the interview, Deckard opined that it was the victim's voice on the recording that Santiago provided.

Additionally, for the purpose of authenticating the recording, Sgt. White testified that during the interrogation Wallace acknowledged that it was the victim's voice on the recording. Based on Wallace's statements and body language during the interrogation, the circuit court found that Wallace vouched for the authenticity of the entire recording. Over the objection of Wallace's trial counsel, the recording was played for the jury at the trial.

The recording contained instructions from Wallace directing the victim to put her mouth in a certain place followed by his inquiring how it tasted. It also included statements by the victim that she had engaged in deviate sexual activity with Wallace, claiming she put her "mouth on his butt." Wallace subsequently admonished the victim not to tell anyone what had taken place. During the interrogation, Wallace also explained that "butt" was the victim's term

for male and female genitalia. The recording made by Santiago was played for the jury, after which the State concluded its case by playing the video of Wallace's interrogation. The defense rested without putting on any additional evidence.

I. *Arguments on Appeal*

A. Sufficiency of the Evidence

We first consider Wallace's argument that there was insufficient evidence to support his conviction for rape. The scope of this argument is defined by the directed-verdict motion that a defendant makes at trial. When we review the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Holly v. State*, 2017 Ark. 201, 520 S.W.3d 677. That means we consider only the evidence that supports the verdict and determine whether the verdict is supported by substantial evidence. *Id*. Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* To be substantial, the circumstantial evidence must exclude every reasonable hypothesis other than the accused's guilt. *Kellensworth v. State*, 2021 Ark. 5, 614 S.W.3d 804. The question whether circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Id.* Finally, when we review the sufficiency of the evidence, we consider all the evidence that supports the verdict, whether it is properly admitted or not. *See, e.g.*, *Williamson v. State*, 2013 Ark. 347, 429 S.W.3d 250.

Disregarding, as we must, those parts of Wallace's argument that either do not comport with our standard of review or were not preserved at trial by his directed-verdict motion, we are

4

left with two issues: (1) Wallace's contention that the State failed to prove that deviate sexual activity took place and (2) whether Wallace's out-of-court confession was properly corroborated so as to satisfy the requirements of Arkansas Code Annotated section 16-89-111 (Supp. 2021). Section 16-89-111(a) states in pertinent part that "[a] confession of a defendant, unless made in open court, does not warrant a conviction unless: (1) Accompanied with other proof that the offense was committed; or (2) Supported by substantial independent evidence to establish the trustworthiness of the confession."

"Deviate sexual activity" is defined by statute as "any act of sexual gratification involving: the penetration, however slight, of the . . . mouth by the penis of another person." Ark. Code Ann. § 5-14-101(1)(a). We hold that the State presented substantial evidence of deviate sexual activity. Proof that deviate sexual activity took place was provided by both Wallace's confession and by the victim's statements on the recording provided by Santiago. The victim's statements constitute proof that the offense was committed so as to substantiate Wallace's confession.

## B. Evidentiary Issues

Wallace next argues that his constitutional rights were violated when the State intentionally violated his right to confront vital witnesses: Luis Santiago and the victim. Wallace asserts that the circuit court erroneously allowed both the alleged victim's child-hearsay statement, made during Deckard's forensic interview with her, to be entered into evidence as well as an unauthenticated, surreptitious recording made and edited by a roommate that had fled the jurisdiction. Wallace asserts that the recording also contains inadmissible testimonial hearsay. We find no merit in these arguments.

## 1. *The forensic interview*

As noted previously, the portion of the forensic interview that the State sought to admit into evidence was not offered for proof of the alleged rape but rather as a source of a voice exemplar to allow Deckard, and presumably the jury, to judge whether it was the victim's voice on the recording that Santiago provided to police. The purpose of the voice exemplar was to authenticate Santiago's recording in accordance with Rule 901 of the Arkansas Rules of Evidence, which provides in pertinent part:

> (a) *General Provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
> (b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> . . .
>
> (5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

That portion of the forensic interview was not offered for the truth of the matter asserted, so it was not hearsay––much less testimonial hearsay.

## 2. *The recording given to police by Santiago*

Although Wallace asserts that this is a Confrontation Clause issue, he is really questioning the admission of Santiago's recording, not Santiago's statements to police. Accordingly, we address this portion of his argument challenging the authenticity of the recording. We review decisions regarding the admission of evidence under an abuse-of-

discretion standard. *Keesee v. State*, 2022 Ark. 68, 641 S.W.3d 628. As noted previously, Rule 901 does not require that the person who made the recording testify as a condition precedent to its admissibility. All that is required is authentication. Deckard testified that she recognized the victim's voice on the recording because she had interviewed the victim just hours after the alleged rape. Sgts. White and Carnahan both testified that they recognized Wallace's voice on the recording from their interrogation of him. Finally, the circuit court found that Wallace's response to hearing the encounter captured by the recording provided proof of its authenticity. For the foregoing reasons, we hold that the circuit court did not abuse its discretion by admitting the recording into evidence.

3. *Confrontation Clause arguments relating to the victim's statements on the recording*

The victim's statements on the recording were admitted into evidence by the circuit court as hearsay exceptions: (1) present-sense impression, (2) excited utterance, or (3) then-existing state of mind, emotion, sensation, or physical condition. *See* Ark. R. Evid. 803(1)–(3) (2021). Citing *Crawford v. Washington*, 541 U.S. 36 (2004), Wallace asserts that they were nonetheless improperly admitted because they were testimonial hearsay. We disagree.

This argument raises a question of constitutional interpretation, which is subject to this court's de novo standard of review. *Vankirk v. State*, 2011 Ark. 428, 385 S.W.3d 144. The Confrontation Clause prohibits the introduction of testimonial hearsay statements unless the declarant "is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (quoting *Crawford*, 541 U.S. at 54). However, a statement is testimonial only if it is "procured with a primary purpose of creating

7

an out-of-court substitute for trial testimony." *Id.* at 244 (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). To determine primary purpose, courts must "objectively evaluate the circumstances" in which the statements are made, along with "the statements and actions of the parties." *Bryant*, 562 U.S. at 359. "Where no such primary purpose exists, the admissibility of a statement is the concern of . . . [the] rules of evidence, not the Confrontation Clause." *Id.* at 359. To determine whether the primary purpose is testimonial, the United States Supreme Court looks to several factors: whether the statement was made to law enforcement officers, *Clark*, 576 U.S. at 246; whether the statements describe "events as they were actually happening," rather than "past events[,]" *Davis v. Washington*, 547 U.S. 813, 827 (2006); whether the statements were made as part of an ongoing emergency, *Bryant*, 562 U.S. 358; whether the statements were made formally, at a police station or as part of sworn testimony, *see id.* at 358.

The case at bar is, in many important respects, analogous to *Clark*. In *Clark*, the statements at issue had been made by an abused three-year-old child, L.P., in response to questions posed by his preschool teachers, who also were mandatory reporters under Ohio law. 576 U.S. at 241–43, 246–49. The teachers noticed telltale signs of child abuse and questioned L.P. in the school lunchroom about what had happened. *Id.* at 241. L.P. told the teachers that "Dee"—his nickname for Clark—caused his injuries. *Id.* When Clark came to the school for pick up, he "denied responsibility for L.P.'s injuries and quickly left with [him]." *Id.* At Clark's subsequent trial for felony child-abuse charges, the state trial court admitted L.P.'s statements over Clark's Confrontation Clause objection. *Id.* at 242.

The Supreme Court held that L.P.'s statements were not testimonial, for several reasons, of which four are pertinent to our inquiry. The *Clark* Court noted that (1) L.P. made the statements "to preschool teachers, not the police." *Id.* at 246. (2) There was "no indication that the primary purpose of the conversation" between L.P. and his teachers "was to gather evidence for Clark's prosecution." *Id.* at 247. (3)The conversation between L.P. and his teachers was "informal and spontaneous" and took place in a lunchroom, not at a police station. (4) L.P.'s age weighed decisively in favor of the State: "Statements by very young children will rarely, if ever, implicate the Confrontation Clause." *Id.* at 247–48. "Few preschool students understand the details of our criminal justice system[,]" the Court explained. *Id.* "Rather, research on children's understanding of the legal system finds that young children have little understanding of prosecution." *Id.* The *Clark* Court held that "it is extremely unlikely that a 3-year-old child in L.P.'s position would intend his statements to be a substitute for trial testimony." *Id.* at 248.

In the case before us, the victim made her statements to her father, not to the police; the statements were made in response to an ongoing situation, not a recollection of past events; the setting was in the perpetrator's bedroom, in the child's home; and there was absolutely no indication that the child had any purpose to subject her father to the criminal justice system. Accordingly, we hold that the victim's statements were not testimonial hearsay and did not implicate the Confrontation Clause. Accordingly, we hold that the circuit court did not err in admitting the recording into evidence.

III. *Arkansas Supreme Court Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), we have examined the record

for all objections, motions, and requests made by either party that the circuit court decided adversely to the appellant. We have found no prejudicial error warranting reversal.

Affirmed.

*Digby Law Firm*, by: *Bobby R. Digby II* and *Alexander C. Denker*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.